**URBANIZADORA VERSALLES, INC.,**
Plaintiff, Appellee,

v.

**Miguel A. RIVERA RIOS, et al.,**
Defendants, Appellants.

No. 82–1228.

United States Court of Appeals,
First Circuit.

Argued Sept. 14, 1982.
Decided March 2, 1983.

994

Marta Quinones de Torres, Asst. Sol. Gen., San Juan, P.R., with whom Miguel Pagan, Acting Sol. Gen., and Reina Colon de Rodriguez, Asst. Sol. Gen., Dept. of Justice, San Juan, P.R., were on brief, for defendants, appellants.

Roberto J. Matos, San Juan, P.R., for plaintiff, appellee.

Before DAVIS,* CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

In 1967, the Puerto Rico Department of Public Works (now the Department of Transportation and Public Works) drew up and filed an "official map" laying out a proposed highway through the City of Ponce. Such a map has been described as "an old but not very widely used device for restricting the use of real property in order to insure orderly community development." 7 P. Rohan, *Zoning and Land Use Controls* § 46.01 at 46–1 (1982). Its legal effect is not to condemn land [1] but rather to reserve it for future public improvements or condemnation. Thus if a landowner later constructs a building where the map shows a

---

* Of the Federal Circuit, sitting by designation.

1. *Commonwealth v. Perez*, 98 P.R.R. 765 (1970). Puerto Rico statutory law provides that "the adoption of an Official Road and Street Map shall not of itself determine the construction of any road or street, or the condemnation or acceptance of lands for such road or street purposes." 23 L.P.R.A. § 62u(c) (1979).

street will go, he will be entitled to no compensation for the value of the improvement when and if the parcel is condemned.

In September of 1968, the plaintiff's corporate predecessor, Urbanizadora Rio Canas, purchased—as part of a larger parcel— the 32 acres of land at issue in this case. The purchasers knew that this parcel was reserved on the official map for use as an intersection in the proposed highway. They consulted with the Department of Public Works to find out how long it would be before the land might actually be condemned and were told by its legal advisor that five years "is a reasonable time for the State to take its final decision and expropriate or purchase the property."

Rio Canas then submitted a plan for residential development of their entire purchase to the Planning Board. In September 1969, the Board approved the plan as to all but the 32 acres reserved for the intersection. This parcel it zoned "P" (for Public). Land in a P district can be used only for public facilities, such as a public parking lot, airport, cemetery, or "other public uses." 23 *Rules & Regulations of Puerto Rico* § 9-401. That September the Planning Board also approved construction plans for the highway, thereby "confirming" the freezing of the property.

In 1971, Rio Canas merged with plaintiff/appellee, Urbanizadora Versalles ("Versalles"). Thereafter, Versalles, the Department of Public Works, and the Planning Board were in frequent communication about the status and future of the land. In 1976 they even agreed it would be expropriated and settled on a price. However, the Commonwealth lacked sufficient funds for the requested ten percent down payment. At that point Versalles brought an action for inverse condemnation in federal district court. That action was dismissed for lack of jurisdiction. *Urbanizadora Versalles v. Alonso Alonso,* No. 76-1422 (D.P.R.1978). In 1977 and again in 1978, plaintiff wrote the Department of Public Works seeking some action; none was forthcoming. The result has been, as the district court in this action found, that the "property has been rendered useless for development or sale since the freezing in 1967."

On March 26, 1980, Versalles filed this action under 42 U.S.C. § 1983 in the United States District Court for the District of Puerto Rico. The defendants are the President of the Planning Board, the Secretary of the Department of Transportation and Public Works, and the Director of the Highway Authority, all sued in their personal and their official capacities. The complaint charged that the freezing deprived the plaintiff of its property without due process of law (it did not allege a taking without just compensation). Plaintiff sought damages and an injunction against continued interference with its use of its property; it subsequently withdrew the damages claim. The case was submitted on stipulated testimony in August of 1981.

Matters became more complicated when, on September 23, 1981, the Planning Board passed a resolution purporting to "liberate" from the highway project approximately half the parcel and to zone it R-1 (one one-family house per 900 square meters). The liberated portion is a narrow strip, separated from a highly developed (R-3) area of Ponce by the unliberated parcel, on which the highway is still supposed to go. Under the resolution the *un*liberated parcel is still "affected" by the proposed highway, but R-1 development is nonetheless expressly permitted. At oral argument the attorney for appellants stated that this half remains on the verge of condemnation, but if it is finally taken, Versalles will be compensated for the full value of any improvements. Appellee, however, sees the resolution's treatment of the second half of the parcel as leaving it entirely uncertain whether the landowner will be compensated for any later improvements should a taking occur. This uncertainty is said to render the second half of the property unsaleable. Passage of this resolution led to a flurry of memoranda as to its legality and effect. The district court found that the resolution did not effectively release the property from the earlier restrictions.

On November 30, 1981, the district court issued a memorandum opinion and judgment finding the restrictions unconstitutional. It ordered the defendants to cease to impede the lawful and economic use or disposal of the land by removing restrictions imposed by the official map or any related restriction; enjoined them from enforcing any "freeze" or restrictions on plaintiff's property which might have the effect of preventing plaintiff from selling, leasing, using, developing or disposing of its property; enjoined them from "reserving" the property for the construction of the highway; and directed them to put the highway somewhere else. The last part of the order was dropped in an amended judgment issued February 9, 1982. While the injunction appears sweeping, all agree that the Commonwealth may still—on payment of just compensation—condemn the property.

Defendants appeal from the amended injunction. They argue that the freeze did not amount to a constitutional deprivation, and that the district court should not have entertained the suit at all.

## I.

■ This circuit has sanctioned an action under 42 U.S.C. § 1983 alleging deprivation of property without due process and seeking injunctive relief in circumstances rather similar to these. *Pamel Corp. v. Puerto Rico Highway Authority,* 621 F.2d 33 (1st Cir.1980). In *Pamel* we distinguished a due process claim seeking injunctive relief from an inverse condemnation proceeding which, in the federal court at least, presents special problems. *Id.* at 35–36; *see also Citadel Corp. v. Puerto Rico Highway Authority,* 695 F.2d 31, 33–34 (1st Cir.1982).[2]

2. *Citadel* and *Pamel* make clear that as long as plaintiffs request injunctive relief only, the eleventh amendment is not a bar. Appellants' argument that this action cannot be maintained because it is actually brought against the Commonwealth of Puerto Rico is therefore without merit. *See also Maria Santiago v. Corporacion de Renovacion Urbana y Vivienda de Puerto Rico,* 554 F.2d 1210, 1212 (1st Cir.1977).

3. Several state supreme courts have reached similar results. *See, e.g., Maryland-National*

■ On the facts appearing here, we believe the district court did not err in finding that the "freezing" of plaintiff's land for such a lengthy period amounted to an unconstitutional deprivation. The court found that the "property has been rendered useless for development or sale since . . . 1967." This finding of fact is not clearly erroneous. A P zoning "constitutes almost a total freezing. The owner cannot use it during the time it is classified thus." *Heftler International, Inc. v. Planning Board,* 99 P.R.R. 454, 461 (1978). The burden placed on the owner by this peculiar precondemnation status increases, and the reasonableness of the governmental action diminishes, over time. *Cf. Thompson v. Tualatin Hills Park and Recreation District,* 496 F.Supp. 530, 543–44 (D.Or.1980) ("The factor which is perhaps the most important for determining if the eminent domain authority has been abused is the amount of time between the initiation and the abandonment of the condemnation process.").

Faced with these same circumstances, the district court of Puerto Rico has awarded similar relief to other plaintiffs. *Citadel Corp. v. Hernandez Colon,* No. 76–1159 (D.P.R.1980) (enjoining continued freeze of plaintiff's property in anticipation of highway construction), *discussed in Citadel Corp. v. Puerto Rico Highway Authority,* 695 F.2d 31 (1st Cir.1982). In *Benenson v. United States,* 548 F.2d 939, 947, 212 Ct.Cl. 375 (Ct.Cl.1977), where a property owner had for at least five years been prevented from selling his property or using it for any income-producing purpose, the court of claims held that this "cloud of condemnation" was unreasonable.[3]

*Capital Park & Planning Commission v. Chadwick,* 286 Md. 1, 405 A.2d 241 (Md.1979) (three year reservation of plaintiff's land for possible taking for use as a public park an abuse of the police power); *Jensen v. City of New York,* 42 N.Y.2d 1079, 399 N.E.2d 645, 369 N.E.2d 1179 (1979) (deprivation without due process where official map made it impossible for plaintiff to obtain a building permit or financing for repairs, or to sell her property); *Charles v. Diamond,* 41 N.Y.2d 318, 392 N.Y.S.2d 594, 360 N.E.2d 1295 (1977) (remanding for determina-

We need not decide for present purposes whether we would find so short a period unconstitutional. Here, the cloud of condemnation hung over appellee's property for 14 years. The fact of appellants' dilatoriness seems inescapable. *Cf. Donohoe Construction Co. v. Montgomery County Council*, 567 F.2d 603, 609 (4th Cir.1977) ("central" concept is that of dilatoriness, though six-month delay not a deprivation without due process), *cert. denied*, 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1148 (1978). This 14-year period exceeds every available indication of what the duration of a reasonable and constitutional freeze might be.[4] In a 1979 statute not yet in effect, the Puerto Rico legislature has drawn the boundary at eight years. 32 L.P.R.A. § 2921. The ALI Model Land Development Code sets a maximum of five years, stating that anything longer would be "inequitable." *See* Model Code §§ 3–202, 3–105; Note to § 3–202. The court of claims considered five years unreasonably long, *Benenson v. United States*, 548 F.2d 939, 212 Ct.Cl. 375 (Ct.Cl. 1977), and the Maryland Supreme Court found even a three-year reservation excessive, *Maryland-National Capital Park & Planning Commission v. Chadwick*, 286 Md. 1, 405 A.2d 241 (Md.1979).

## II.

Somewhat more troublesome is the question whether claims of this sort should be litigated in federal rather than local courts. Appellants contend that since land use restrictions are a matter of local concern, the federal court should have abstained, leaving appellants to their local remedies, judicial and administrative. As we have noted, *see*

note 4, *supra*, the Supreme Court of Puerto Rico has recognized that an official map and its consequences may become so oppressive as to violate both the Puerto Rico and federal constitutions. More recently the legislature of Puerto Rico has imposed an eight-year limit on such freezes, although the statute came too late to help here. 32 L.P.R.A. § 2921. The preamble to that statute indicates that it was enacted precisely to mitigate situations such as the present. *See* 1979 Laws of Puerto Rico 5–7. Thus while relief under the statute would be unavailable now, its presence demonstrates awareness of, and sympathy towards, plaintiff's predicament and judicial relief may be available in the Commonwealth courts.

This case does not, however, fall neatly within any of the categories where abstention has been considered appropriate. *See generally Colorado River Water Conservation District v. United States*, 424 U.S. 800, 814–16, 96 S.Ct. 1236, 1244–45, 47 L.Ed.2d 483 (1976) (outlining varieties of abstention). While the case involves a matter of local concern, federal court involvement does not disrupt a complex, difficult, and coherent regulatory scheme. *Cf. Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); *Construction Aggregates Corp. v. Rivera de Vicenty*, 573 F.2d 86, 90–93 (1st Cir.1978). Nor does plaintiff's federal constitutional claim depend on the interpretation of an unclear Puerto Rico statute. *Cf. Louisiana Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (unclear eminent domain statute); *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643,

tion of reasonableness of delay caused by city's requirement that developer use unavailable public sewer); *Fred F. French Investing Co. v. City of New York*, 39 N.Y.2d 587, 385 N.Y.S.2d 5, 350 N.E.2d 381 (1976) (ordinance rezoning private parks as undevelopable public parks an abuse of the police power in that it permanently deprived the owner of any reasonable use of his property).

**4.** The Supreme Court of Puerto Rico has ruled that the standard for testing delay in circumstances such as this is one of reasonableness. *See Flamboyan Gardens, Inc. v. Junta de Plani-*

*ficacion*, 103 D.P.R. 884 (1975); *Heftler International, Inc. v. Planning Board*, 99 P.R.R. 454 (1970); *Waymouth Corp. v. Planning Board*, 80 P.R.R. 599 (1958); *Segarra v. Planning Board*, 71 P.R.R. 139 (1950). The *Flamboyan Gardens* case sets out a nonexclusive list of relevant factors—the nature of the proposed improvement, its priority, the cost of the land and the funds available to purchase it, the harm to the landowner, the possibility of productive uses within the restrictions, and the amount of time elapsed—which support the result reached by the district court here.

85 L.Ed. 971 (1941). Because section 2921 will not become effective until 1987, no Puerto Rico statute is at issue. The relevant cases in Puerto Rico have been decided under the Commonwealth's constitution, *see Heftler International, Inc. v. Planning Board,* 99 P.R.R. 454 (1970), which in relevant respects is much the same as its federal counterpart, *see* P.R.Const., art. II, §§ 7, 9. In *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971), the Supreme Court "declined to order abstention where the federal due process claim was not complicated by an unresolved state law question, even though the plaintiffs might have sought relief under a similar provision of the state constitution." *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 84–85 n. 8, 95 S.Ct. 870, 875–76 n. 8, 43 L.Ed.2d 32 (1975). *See also Examining Board v. Flores de Otero,* 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976); *The Herald Co. v. McNeal,* 553 F.2d 1125, 1130 (9th Cir.1977). That is the situation here.

■ Several practical considerations also militate against abstention. First, where the essence of the plaintiff's claim is delay, it would be unfortunate to prolong matters any further than necessary. *See Harris County Commissioners Court v. Moore,* 420 U.S. at 84, 95 S.Ct. at 875. Second, it seems almost certain that Puerto Rico's courts would hold the 14-year freeze excessive.[5] It is settled Puerto Rico law that a freezing of land for public use cannot extend beyond a reasonable term. *Flamboyan Gardens, Inc. v. Junta de Planificacion,* 103 D.P.R. 884 (1975) (listing relevant factors). While this judicially imposed limit has apparently proven difficult to apply, leading to the recent legislatively imposed eight-year limit, the tenor of the Puerto Rico cases suggests that, in these circumstances, a 14-year period would exceed a "reasonable term." Nor is the district court's remedy out of keeping with Puerto Rico's approach. The new statute provides that after eight years the reserved land is to be expropriated within 90 days; failing that, the restrictions are to be lifted immediately. 32 L.P.R.A. § 2922.

■ In short, abstention is not required here to avoid a "needless friction with state policies." *Druker v. Sullivan,* 458 F.2d 1272, 1274 (1st Cir.1972), *quoting Railroad Commission v. Pullman Co.,* 312 U.S. at 500, 61 S.Ct. at 645. The injunction will not result in the "unseemly conflict between two sovereigns, the unnecessary impairment of state functions, [or] the premature determination of constitutional questions." *Martin v. Creasy,* 360 U.S. 219, 224, 79 S.Ct. 1034, 1037, 3 L.Ed.2d 1186 (1959). This is not to say that federal courts should always be hospitable to claims of abuse of the eminent domain or zoning powers where state remedies are available. But a balancing of the competing considerations leads us to believe that the district court was not obliged to abstain in these particular circumstances. *See generally Donohoe Construction Co. v. Montgomery County Council,* 567 F.2d 603, 607, 609 (4th Cir.1977), *cert. denied,* 438 U.S. 905, 98 S.Ct. 3123, 57 L.Ed.2d 1148 (1978).

■ Appellants also contend that the district court should have declined to consider the merits of this claim because Versalles failed to exhaust administrative remedies. In particular, they assert, Versalles failed to request a hardship variance from the Planning Board or submit a plan for development.[6] Versalles was in touch with the Planning Board and the Department of Public Works off and on for years without

---

5. We hesitate only because the Puerto Rico courts impose a stringent requirement of exhaustion of administrative remedies. In the circumstances of this case, however, we feel our result is tolerably consistent with the local approach. *See* pages 998–999, *infra.*

6. The Puerto Rico Supreme Court cases impose a strict requirement that all administrative remedies, including appeals and requests for reconsideration, be explored before resort to the courts. *E.g., Heftler International,* 99 P.R.R. at 462–64; *Waymouth Corp.,* 80 P.R.R. at 602. However, the Court has held that the administrative avenue need not be pursued if doing so would be injurious or futile. *Widow of Iturregui v. Commonwealth,* 99 P.R.R. 474, 476–77 (1970).

success. Submitting a planned development inconsistent with the P classification would almost certainly have been futile.[7] Indeed, Versalles' predecessor *had* submitted such a plan in 1968 only to have it rejected by the Planning Board because the property was reserved. Most important, there is no requirement of exhaustion of administrative remedies in section 1983 actions. *Patsy v. Board of Regents,* —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Thus, any failure entirely to exhaust administrative remedies is not a bar to this action.

## III.

■ We hold, therefore that the district court was entitled to enjoin the continued inhibitions upon use and development of the property flowing from the official map and the "P" zoning. The Commonwealth had no right over such an extended period to use these devices to limit the value of the land so as to reduce its costliness should a taking eventually occur.

■ Appellants insist, however, that the Planning Board's 1981 resolution, which purported to rezone the parcel R–1, and which was adopted after this litigation began, removed these inhibitions and in effect mooted any right to or need for injunctive relief. We disagree. The district court supportably found that the resolution "does not have the effect of releasing the property." While authorizing R–1 development, the resolution continued to leave one half of the parcel subject to the planned highway, whatever that meant. Thus Puerto Rico might later claim, upon taking the parcel, that it had no obligation to compensate the owner for any improvements made subsequent to the resolution. Additionally, the R–1 zoning itself seems suspect. The entire surrounding area is zoned R–3, a classification permitting more intensive development than R–1, and, according to appellee, the only classification that would allow economically viable development. No convincing

reason has been suggested, from a *zoning* perspective, to zone this parcel anything else. The district court could infer that the R–1 zoning was a covert attempt to hold down the price of future condemnation on the theory that if plaintiff could not be prevented from building entirely, it might at least be prevented from building very much. It is well settled that the zoning authority cannot be used to limit or depress the value of land so as to reduce the expense of a subsequent condemnation. *E.g., Peacock v. City of Sacramento,* 271 Cal. App.2d 845, 77 Cal.Rptr. 391 (Cal.App.1969); 5 P. Rohan, *Zoning & Land Use Controls* § 34.04[3] (1982).

In light of the questionable validity of the 1981 resolution, and the district court's reasonable finding that the resolution did not release the property from the unconstitutional inhibitions, the district court did not abuse its discretion in entering the injunction it did. We add that in upholding the injunction, we do so only on the construction that it does not deny Puerto Rico the right to impose reasonable and constitutional future zoning restrictions on the parcel in question. While Puerto Rico may not misuse its zoning powers to reduce the expense of a subsequent condemnation, it of course continues to enjoy ordinary zoning and planning powers with respect to the parcel, subject to the court's watchful oversight in the event of continued abuse.

*Affirmed.*

---

7. At oral argument counsel for Versalles made this point with some vehemence, asserting that such a plan would be rejected and returned the very day it was submitted.