HARRIS COUNTY COMMISSIONERS COURT ET AL.
*v.* MOORE ET AL.

No. 73–1475.   Argued November 11, 1974—
Decided February 18, 1975

*Edward J. Landry* argued the cause for appellants. With him on the brief were *Joe Resweber* and *Michael R. Davis.*

*John G. Gilleland* argued the cause for appellees Moore et al. With him on the brief was *Virgil H. Barfield. C. Anthony Friloux, Jr.,* argued the cause and filed a brief for appellee Zaboroski.

Opinion of the Court by MR. JUSTICE MARSHALL, announced by MR. CHIEF JUSTICE BURGER.

The appellees brought this action to challenge a plan redistricting the justice of the peace precincts in Harris County, Tex. Because the plan provided for consolidation of several precincts, three justices of the peace and two constables lost their jobs. These five officials, along with two voters from the defunct precincts, sought to enjoin implementation of the redistricting plan on the ground that the Texas statute providing for their removal from office at the time of redistricting denied them the equal protection of the laws. The three-judge District Court granted relief, declaring the statute unconstitutional and enjoining the redistricting. The order of the District Court was stayed by MR. JUSTICE POWELL. We denied a motion to vacate the stay, 415 U. S. 905 (1974), and subsequently noted probable jurisdiction, 417 U. S. 928 (1974). We reverse and remand to the District Court with instructions to dismiss the complaint without prejudice.

I

Under Texas law, the Commissioners Court is the general governing body of each county; one of its duties is to divide the county into precincts for the election of justices of the peace and constables, and to redistrict the precincts when necessary. Tex. Rev. Civ. Stat. Ann., Art. 2351 (1) (1971).

In June 1973, the Commissioners Court of Harris County adopted a redistricting plan for the eight justice

of the peace precincts in the county. The last redistricting had taken place in 1876, and the enormous population changes in the Houston area had resulted in gross disparities in population among the precincts: the largest precinct contained approximately one million persons, while the smallest had fewer than 7,000.

Under the old plan, one justice of the peace and one constable were assigned to each precinct except the largest, which was allotted two justices and one constable. Because of the apparent discrepancy in the workload of the officials in different precincts, the Commissioners Court adopted a redistricting plan that redrew the precinct lines. Although the proposed new precincts still varied substantially in population size, the disparity was much less than it had been.

Among other changes, the plan consolidated three of the smallest precincts and parts of two others into a single new precinct. As a result, four justices and three constables found themselves residents of a single precinct, which was entitled by law to a maximum of only one constable and two justices of the peace. Pursuant to a Texas statute, Tex. Rev. Civ. Stat. Ann., Art 2351½ (c) (1971), the Commissioners Court declared the constable and justice posts for that precinct to be vacant, since there were more officials living in the precinct than positions available.[1] The Commissioners Court then filled the

---

[1] Article 2351½ (c) provides:

"When boundaries of justice of the peace precincts are changed, so that existing precincts are altered, new precincts are formed, or former precincts are abolished, if only one previously elected or appointed justice of the peace or constable resides within a precinct as so changed, he shall continue in office as justice or constable of that precinct for the remainder of the term to which he was elected or appointed. If more than one justice or constable resides within a precinct as so changed, or if none resides therein, the office shall

vacancies, Tex. Rev. Civ. Stat. Ann., Art. 2355 (1971), appointing one of the displaced constables to the new constable post and one of the displaced justices to one of the two new justice positions. A nonincumbent was appointed to fill the other slot.

The five officeholders, threatened with removal prior to the expiration of their elected terms, resorted to court action in an effort to block implementation of the redistricting plan. One of the constables filed suit in state court, but when that court denied his application for a temporary injunction, he apparently abandoned the action. Shortly thereafter, the three displaced justices and two constables, along with two voters who had lived in their precincts, brought suit in the United States District Court for the Southern District of Texas, claiming that the redistricting scheme was unconstitutional. Their removal pursuant to Art. 2351½ (c) violated the Due Process and Equal Protection Clauses of the Fourteenth Amendment, the officials contended. More specifically, they argued that the redistricting order was

become vacant and the vacancy shall be filled as other vacancies; provided, however, that in precincts having two justices, if two reside therein, both shall continue in office, and if more than two reside therein, both offices shall become vacant."

Another statute, Tex. Elec. Code Ann., Art. 1.05 (Supp. 1974–1975), has been read to require that school district officials reside throughout their terms in the districts that they serve. *Whitmarsh* v. *Buckley*, 324 S. W. 2d 298 (Tex. Ct. Civ. App. 1959). County commissioners, by contrast, are not required to reside in their precincts for their full terms. *Childress County* v. *Sachse*, 310 S. W. 2d 414 (Tex. Ct. Civ. App.), holding approved, 158 Tex. 371, 312 S. W. 2d 380 (1958). The Texas courts have not yet settled whether Art. 1.05 requires that justices of the peace and constables reside in their precincts throughout their terms, or whether the state constitutional provisions establishing a requirement of county residence for all county officers, Tex. Const., Art. 16, § 14; Art. 5, § 24, excuse justices and constables from the requirements of Art. 1.05.

constitutionally invalid because it did not meet "one man, one vote" standards, because it denied voters in certain precincts the full effect of their votes, and because the precincts were redrawn along racial lines. Although the appellees did not expressly raise a state-law claim in their complaint,[2] they argued in their pretrial brief that Art. 2351½ (c) was invalid under the State Constitution as well, relying on several state-court cases and two opinions of the Texas Attorney General. In response, the appellants requested that the complaint be dismissed because the suit raised no substantial federal questions and because the appellees had failed to exhaust their state remedies before bringing suit in federal court.[3]

A three-judge court was convened. It heard argument and issued an order later the same day. In its order, the court asserted jurisdiction and enjoined implementation of the redistricting plan on the ground that the Texas statute providing for the removal of the plaintiff justices and constables was unconstitutional on its face. A week later the court filed a brief opinion in which it wrote that insofar as the statute shortens the term of an elected public official merely because redistricting places him in a district with others, "it invidiously and irrationally discriminates between him and others not so affected." In addition, the court held that the statute as applied had discriminated between those who voted for or were entitled to vote for the displaced officials, and the voters in other precincts where the

---

[2] The appellees noted in their First Amended Complaint for Declaratory Judgment, filed September 17, 1973, that the state statute, as interpreted by the Commissioners Court, was in apparent conflict with Art. 5, § 24, of the Texas Constitution, which provides a mechanism for removal of county officers, including justices and constables.

[3] In their pretrial brief, the appellants more properly characterized their "exhaustion" defense as a request for the District Court to abstain.

elected officials were permitted to serve a full term. Because it found no compelling interest served by redistricting in the middle of plaintiffs' terms,[4] the court held that to the extent that the redistricting order appointed other persons to plaintiffs' offices and prevented plaintiffs from carrying out their duties and receiving their salaries for the remainder of their elected terms, the order was invalid.[5]

II

The appellants urge us to reverse the District Court on the merits or, in the alternative, to order the court to abstain pending determination of the state-law questions that pervade this case.[6] Because we agree with appellants that the District Court should have abstained, we

---

[4] The appellants point out that since staggered terms are constitutionally mandated in Texas, Tex. Const., Art. 16, § 65, it would have been impossible for the Commissioners Court to have redistricted at a time that would not have fallen in the middle of some of the justices' or constables' terms.

[5] Because it granted relief on the equal protection claim, the court found it unnecessary to reach the appellees' other contentions. Nor did the court address the state-law questions or the appellants' abstention argument.

[6] We have jurisdiction of this appeal under 28 U. S. C. § 1253. The statute challenged here was plainly of statewide application; it was attacked as being unconstitutional on its face or as applied; and for the purposes of the Three-Judge Court Act, 28 U. S. C. § 2281, the defendant county commissioners were "state officers" in administering the challenged statute. *Board of Regents* v. *New Left Education Project*, 404 U. S. 541, 544 n. 2 (1972). The appellees' claim, moreover, appears sufficient to raise a question for a three-judge court. We recently stated that "claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U. S. C. § 2281." *Goosby* v. *Osser*, 409 U. S. 512, 518 (1973).

reverse without reaching the merits of the equal protection claim sustained by the District Court.

In *Railroad Comm'n* v. *Pullman Co.,* 312 U. S. 496 (1941), the Court held that when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state-law question and thus avoid the possibility of unnecessarily deciding a constitutional question. Since that decision, we have invoked the *"Pullman* doctrine" on numerous occasions. *E. g., Lake Carriers' Assn.* v. *MacMullan,* 406 U. S. 498 (1972); *Askew* v. *Hargrave,* 401 U. S. 476 (1971); *Reetz* v. *Bozanich,* 397 U. S. 82 (1970); *Harrison* v. *NAACP,* 360 U. S. 167 (1959); *Spector Motor Service, Inc.* v. *McLaughlin,* 323 U. S. 101 (1944); see Field, Abstention in Constitutional Cases: The Scope of the *Pullman* Abstention Doctrine, 122 U. Pa. L. Rev. 1071, 1084–1101 (1974). We have repeatedly warned, however, that because of the delays inherent in the abstention process and the danger that valuable federal rights might be lost in the absence of expeditious adjudication in the federal court, abstention must be invoked only in "special circumstances," see *Zwickler* v. *Koota,* 389 U. S. 241, 248 (1967), and only upon careful consideration of the facts of each case. *Baggett* v. *Bullitt,* 377 U. S. 360, 375–379 (1964); *Railroad Comm'n* v. *Pullman Co., supra,* at 500.

Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, we have regularly ordered abstention. See *Askew* v. *Hargrave, supra; Albertson* v. *Millard,* 345 U. S. 242 (1953); *Chicago* v. *Fieldcrest Dairies, Inc.,* 316 U. S. 168, 173 (1942); cf. *Meredith* v. *Winter Haven,* 320 U. S. 228, 236 (1943).[7] Similarly, when the state-

---

[7] In *Gibson* v. *Berryhill,* 411 U. S. 564, 580–581 (1973), we held that abstention was not required, even though a suit that might have obviated the need for federal injunctive relief was pending in the

law questions have concerned matters peculiarly within the province of the local courts, see *Reetz* v. *Bozanich, supra; Fornaris* v. *Ridge Tool Co.,* 400 U. S. 41 (1970); cf. *Louisiana Power & Light Co.* v. *City of Thibodaux,* 360 U. S. 25 (1959), we have inclined toward abstention. On the other hand, where the litigation has already been long delayed, see *Hostetter* v. *Idlewild Bon Voyage Liquor Corp.,* 377 U. S. 324, 329 (1964), or where it has seemed unlikely that resolution of the state-law question would significantly affect the federal claim, see *Chicago* v. *Atchison, T. & S. F. R. Co.,* 357 U. S. 77, 84 (1958); *Public Utilities Comm'n* v. *United Fuel Gas Co.,* 317 U. S. 456, 462–463 (1943), the Court has held that abstention should not be required.

Among the cases that call most insistently for abstention are those in which the federal constitutional challenge turns on a state statute, the meaning of which is unclear under state law. If the state courts would be likely to construe the statute in a fashion that would avoid the need for a federal constitutional ruling or otherwise significantly modify the federal claim, the argument for abstention is strong. See *Kusper* v. *Pontikes,* 414 U. S. 51 (1973); *Lake Carriers' Assn.* v. *MacMullan, supra; Harman* v. *Forssenius,* 380 U. S. 528 (1965); *Harrison* v. *NAACP, supra.* The same considerations apply where, as in this case, the uncertain status of local law stems from the unsettled relationship between the state constitution and a statute.[8] Here resolution of the

state courts. In *Gibson,* however, state authorities were pressing charges against the plaintiffs without awaiting the results of the state-court action, and some of the charges against the plaintiffs might have survived even a favorable ruling in the State Supreme Court. Under those circumstances, we held that it was not an abuse of discretion for the District Court to decline to abstain.

[8] In *Wisconsin* v. *Constantineau,* 400 U. S. 433 (1971), we declined to order abstention where the federal due process claim was not

question whether the Texas Constitution permits the County Commissioners Court to replace constables and justices of the peace when several live in the same precinct will define the scope of Art. 2351½ (c) and, as a consequence, the nature and continued vitality of the federal constitutional claim. As we wrote in *Reetz* v. *Bozanich,* 397 U. S., at 87, "the nub of the whole controversy may be the state constitution."

The appellees insist that abstention would be improper in this case because a Texas court construction of Art. 2351½ (c) would not modify or avoid the equal protection question passed on by the District Court. Having analyzed the relevant Texas statutes, constitutional provisions, and precedents, however, we are unable to share their conviction.

The Texas Constitution provides that a justice of the peace or constable "shall hold his office for four years and until his successor shall be elected and qualified." Art. 5, § 18. Justices of the peace and constables may be removed by state district court judges for various causes, after notice and a trial by jury. Art. 5, § 24. What is unsettled is whether these two provisions ensure justices and constables tenure until the completion of their elected terms even when midterm redistricting places them outside their original precinct or puts them into a precinct that has more than its full complement of officeholders.

complicated by an unresolved state-law question, even though the plaintiffs might have sought relief under a similar provision of the state constitution. But where the challenged statute is part of an integrated scheme of related constitutional provisions, statutes, and regulations, and where the scheme as a whole calls for clarifying interpretation by the state courts, we have regularly required the district courts to abstain. See *Reetz* v. *Bozanich,* 397 U. S. 82 (1970); *Meridian* v. *Southern Bell Tel. & Tel. Co.,* 358 U. S. 639 (1959).

In two early cases, the Texas courts held that the State
Constitution provides no guarantee of tenure for justices
and constables when the County Commissioners Court
elects to exercise its redistricting authority. *State ex rel.
Dowlen* v. *Rigsby,* 17 Tex. Civ. App. 171, 43 S. W. 271,
holding approved, 91 Tex. 351, 43 S. W. 1101 (1897);
*Ward* v. *Bond,* 10 S. W. 2d 590 (Tex. Ct. Civ. App. 1928).
The State Supreme Court later appeared to reverse this
stand in approving a lower court decision that the State
Constitution guaranteed to county commissioners the
right to serve until the expiration of their terms, even
if redistricting resulted in their living outside their pre-
cincts. *Childress County* v. *Sachse,* 310 S. W. 2d 414
(Tex. Ct. Civ. App.), holding approved, 158 Tex. 371,
312 S. W. 2d 380 (1958). In an opinion filed shortly
before the District Court hearing in this case, the Texas
Attorney General applied the reasoning of the *Sachse*
case and ruled that to the extent that Art. 2351½ (c)
vacated the office of a justice of the peace who no longer
lived within his precinct, the statute was invalid.[9] The
Attorney General concluded that the State Constitution
entitles justices and constables to serve their full terms
unless they are removed pursuant to Art. 5, § 24. Op.
Atty. Gen. H–220 (1974). The reasoning of the Attor-
ney General's opinion would appear to extend to this

---

[9] The appellees' allegation that Art. 2351½ (c) is unconstitution-
ally vague is revealing. The "vagueness" of which they complain
is no more than uncertainty about the applicability of the statute
to a particular situation; it is not the sort of vagueness that leaves
those subject to a statute uncertain about what is required of them.
In the case where applicability of the statute is uncertain, abstention
is often proper, while in the case where the vagueness claim goes to
the obligations imposed by the statute, it is not, since a single state
construction often would not bring the challenged statute "within
the bounds of permissible constitutional certainty." *Baggett* v.
*Bullitt,* 377 U. S. 360, 378 (1964); *Procunier* v. *Martinez,* 416 U. S.
396, 401 n. 5 (1974).

case.[10]   Although appellants contend that the Attorney
General has misconstrued the Texas precedents, it seems
far from settled that under state law the appellee office-
holders must lose their jobs.[11]

These difficult state-law questions intrude in yet an-
other way that strengthens the case for abstention.   The
proper scope of the order entered by the District Court
and the applicability of that order to the plaintiffs' claims
depend directly on questions of state law.   The court's
initial order held Art. 2351½ (c) unconstitutional and
enjoined the redistricting plan altogether.   In its opinion,
the court apparently intended to narrow its order some-
what, by holding the statute unconstitutional as applied
and by enjoining the redistricting order only to the
extent that it removed the appellees from their jobs.
Yet even that relief was broader than the court's hold-
ing would support.   Absent Art. 2351½ (c), Texas law
may well dictate that upon redistricting, all the justice
and constable positions in the county would be vacated.[12]

---

[10] Opinions of the Attorney General are "entitled to careful con-
sideration by the courts, and quite generally regarded as highly per-
suasive," *Jones* v. *Williams,* 121 Tex. 94, 98, 45 S. W. 2d 130, 131
(1931).   The 1974 opinion, however, may be given close scrutiny
by the state courts, as it appears to be in direct conflict with several
earlier opinions of the Attorney General, see n. 12, *infra.*

[11] Even if the *Sachse* case does not apply to justice precincts, Art.
2351½ (c) may still be invalid under state law as a legislative en-
croachment on the county commissioners' constitutional powers to
fill justice vacancies created in the course of redistricting.   Tex.
Const., Art. 5, § 28.   See Op. Atty. Gen. M–68 (1967).   If the stat-
ute is unconstitutional for this reason, all the justice positions in the
county would have been vacated, not just those occupied by the
appellees.   Obviously, this construction of Texas law would drasti-
cally alter the nature of appellees' federal claim.

[12] There is support for this view in several early cases and in a
number of state Attorney General's opinions.   See *Brown* v. *Meeks,*
96 S. W. 2d 839 (Tex. Ct. Civ. App. 1936); *State ex rel. Dowlen* v.

Since the District Court concluded only that Art. 2351½ (c) denied the officeholders and voters equal protection by removing some officials in the county but not others, it should not automatically have imposed one remedy—reinstatement—when Texas law might well call for quite another—removal of all the affected officeholders. Yet if the District Court had limited itself to declaring Art. 2351½ (c) unconstitutional, and the Commissioners Court had determined that state law would then require that all the county justice and constable positions be vacated,[13] the appellees would be forced to resort to state court in order to vindicate their claimed right to reinstatement. In short, not only the character of the federal right asserted in this case, but even the availability of the relief sought turn in large part on the same unsettled state-law questions. Because the federal claim in this case is "entangled in a skein of state law that must be untangled before the federal case can proceed," *McNeese* v. *Board of Education,* 373 U. S. 668, 674 (1963), we conclude that the District Court erred in not adopting appellants' suggestion to abstain.

In order to remove any possible obstacles to state-court jurisdiction, we direct the District Court to dismiss the complaint.[14] The dismissal should be without prejudice

*Rigsby,* 17 Tex. Civ. App. 171, 43 S. W. 271, holding approved, 91 Tex. 351, 43 S. W. 1101 (1897); Ops. Atty. Gen. V–790 (1949); V–1032 (1950); WW–536 (1958); C–112 (1963). These opinions of the Attorney General were qualified in a manner not affecting this case in Op. Atty. Gen. M–68 (1967); see also Op. Atty. Gen. M–562 (1970).

[13] The Commissioners Court has in fact adopted this view of Texas law in this case. Brief for Appellants 18–20.

[14] Ordinarily the proper course in ordering *"Pullman* abstention" is to remand with instructions to retain jurisdiction but to stay the federal suit pending determination of the state-law questions in state court. See *Zwickler* v. *Koota,* 389 U. S. 241, 244 n. 4 (1967). The Texas Supreme Court has ruled, however, that it cannot grant

so that any remaining federal claim may be raised in a federal forum after the Texas courts have been given the opportunity to address the state-law questions in this case. *England* v. *Louisiana State Board of Medical Examiners*, 375 U. S. 411, 421–422 (1964).

*Reversed and remanded.*

MR. JUSTICE DOUGLAS, dissenting.

The principle of abstention—judicially created by *Railroad Comm'n* v. *Pullman Co.*, 312 U. S. 496 (1941)— promises to become a serious barrier to the assertion by federal courts of the jurisdiction Congress has bestowed on them. In the present case, suit was started in 1973 in the District Court, which rendered its judgment January 30, 1974. The term of office of the three justices of the peace who were ousted expired December 31, 1974; that of the two constables will expire December 31, 1976. After being brought all the way here by the State that ousted them from office, they are now told that their federal suit is dismissed and that they must start litigation anew in the state courts. They would necessarily have to be very rich officeholders—or else be financed by some foundation—to be able to pay the expense of this long, drawn-out litigation.

The three judges who made up the District Court in

___

declaratory relief under state law if a federal court retains jurisdiction over the federal claim. *United Services Life Ins. Co.* v. *Delaney*, 396 S. W. 2d 855 (1965); see *Romero* v. *Coldwell*, 455 F. 2d 1163, 1167 (CA5 1972); *Barrett* v. *Atlantic Richfield Co.*, 444 F. 2d 38, 45–46 (CA5 1971).

We have adopted the unusual course of dismissing in this case solely in order to avoid the possibility that some state-law remedies might otherwise be foreclosed to appellees on their return to state court. Obviously, the dismissal must not be used as a means to defeat the appellees' federal claims if and when they return to federal court.

this case were Thomas G. Gee, John V. Singleton, Jr., and Carl O. Bue, Jr., all named from Texas, all versed in the idiosyncrasies of Texas law. A state agency, acting with full authority of state law,* has ousted these elected officials. By remitting them to a state court we now leave them without an effective remedy in view of the short terms of office that are involved. I said in *Harrison* v. *NAACP*, 360 U. S. 167, 184 (1959) (dissenting opinion):

> "We need not—we should not—give deference to a state policy that seeks to undermine paramount federal law. We fail to perform the duty expressly enjoined by Congress on the federal judiciary in the Civil Rights Acts when we do so."

We have a like situation here.

Here, as in cases in a federal court by reason of diversity of citizenship, ordinarily a federal court must not decline to exercise the jurisdiction Congress has conferred upon it "merely because the answers to the questions of state law are difficult or uncertain or have not yet been given by the highest court of the state," *Meredith* v. *Winter Haven*, 320 U. S. 228, 234–235 (1943). The alternative course, we held, "would thwart the purpose of the jurisdictional act," *id.*, at 235.

---

*Texas Rev. Civ. Stat. Ann., Art. 2351½ (c) (1971), provides: "When boundaries of justice of the peace precincts are changed, so that existing precincts are altered, new precincts are formed, or former precincts are abolished, if only one previously elected or appointed justice of the peace or constable resides within a precinct as so changed, he shall continue in office as justice or constable of that precinct for the remainder of the term to which he was elected or appointed. If more than one justice or constable resides within a precinct as so changed, or if none resides therein, the office shall become vacant and the vacancy shall be filled as other vacancies; provided, however, that in precincts having two justices, if two reside therein, both shall continue in office, and if more than two reside therein, both offices shall become vacant."

The teaching of *Pullman* is greatly exaggerated here. No special circumstances warranting abdication of federal jurisdiction have been shown. Where the judges making up the panel of the three-judge court are from the State whose local law is at issue, I would leave it to them to decide whether the policy of *Pullman* should be applied in a given case. They know about *Pullman* as well as most of us. It was a new doctrine when announced. It is word that has long been part of the warp and woof of federal law.

The three judges, seasoned in Texas law, saw no ambiguities, no exotic question of law remaining unresolved, and rendered a forthright decision that was eminently correct on federal law. I would leave to our district judges the question whether the local-law problem counseled abstention.

We do a great disservice when we send these tired and exhausted litigants into the desert in search of this Holy Grail that is already in the keeping of the federal court.