Robert T. **GUINEY**, etc.,
Plaintiff, Appellant,

v.

Francis M. **ROACHE**, etc.,
Defendant, Appellee.

No. 87–1219.

United States Court of Appeals,
First Circuit.

Heard Sept. 16, 1987.
Decided Dec. 2, 1987.

Frank J. McGee with whom Steven M. Guiney and McGee & Phillips, Marshfield, Mass., were on brief, for plaintiff, appellant.

Marjorie Heins, Massachusetts Civil Liberties Union Foundation, Boston, Mass., and James Newman on brief for the Civil Liberties Union of Massachusetts, amicus curiae.

Robert Carty, Hyde Park, Mass., with whom Kevin S. McDermott and James F. Hart, Office of the Legal Advisor, Boston Police Department, Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN, ALDRICH and TORRUELLA, Circuit Judges.

COFFIN, Circuit Judge.

Plaintiff brought an action challenging, on federal constitutional grounds, Boston Police Department Rule 111, which authorizes urinalysis drug testing of Department employees. After a trial on the merits, the district court decided *sua sponte* to abstain from the exercise of federal jurisdiction, on the authority of *Railroad Comm'n v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). *See Guiney v. Roache*, 654 F.Supp. 1287 (D.Mass.1987). Plaintiff now appeals the district court's order dismissing the case. We conclude that abstention was improper and vacate the district court's order.

## I.

In April of 1986, the defendant, Police Commissioner of the City of Boston, issued Rule 111, which authorized urinalysis drug testing of Department employees on both a reasonable-suspicion and a random basis. A positive test result would lead to the employee's being charged with unauthorized use of illegal drugs and conduct unbecoming an employee. If the Department could prove the violations were knowing, the employee would be subject to discipline, including discharge. *See Guiney,* 654 F.Supp. at 1289–94 (quoting Rule 111 in full). Refusal to take the test, the parties stipulate, could also lead to discharge or other discipline.

Plaintiff is president and a member of the Boston Patrolmen's Association, Inc., a labor organization consisting of some 1500 Boston police patrolmen. He brought an action for declaratory and injunctive relief in the district court, claiming that Rule 111 permitted unreasonable searches and seizures in violation of the fourth and fourteenth amendments to the federal constitution. Defendant agreed not to enforce Rule 111 pending the district court's ruling.

After a trial on the merits, the district court decided, *sua sponte,* to abstain on *Pullman* grounds. The court reasoned, first, that the Massachusetts courts might be able to resolve the case on state constitutional grounds and, second, that the Massachusetts courts were better suited to resolve certain factual issues in the case. We consider each of these points in turn and then conclude by addressing additional arguments advanced by defendant in favor of dismissal.

## II.

We start with the proposition that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."

*Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). "'Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.'" *Id.* (quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–63, 3 L.Ed.2d 1163 (1959)). The *Pullman* variety of abstention is appropriate in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent, but unsettled, state law. Where state law is unsettled, a federal court's resolution of the state law question will inevitably be "a forecast rather than a determination," *Pullman,* 312 U.S. at 499, 61 S.Ct. at 645, "a tentative answer which may be displaced tomorrow by a state adjudication." *Id.* at 500, 61 S.Ct. at 645. Because the state adjudication might alter or moot the federal constitutional question, *Pullman* abstention serves a dual purpose: it "avoid[s] the waste of a tentative decision as well as the friction of a premature constitutional adjudication." *Id.*

Sometimes *Pullman* abstention is appropriate because the federal claim is "entangled in a skein of state law that *must* be untangled before the federal case can proceed." *McNeese v. Board of Education,* 373 U.S. 668, 674, 83 S.Ct. 1433, 1437, 10 L.Ed.2d 622 (1963) (emphasis added). But that is not the case here; plaintiff's complaint does not attack Rule 111's validity under any provision of state law, and there is no real dispute over the meaning of Rule 111.[1] Because there is no need to forecast state law, there is no risk of the friction that might be occasioned by such a forecast and no risk that the district court's decision might "be displaced tomorrow by a

---

1. Although the district court was concerned that some ambiguity remained as to the consequences under Rule 111 of a positive test result, *Guiney,* 654 F.Supp. at 1297–98, it did not base its decision to abstain on this ambiguity, *id.* at 1298, and our own review of the record persuades us that Rule 111 is not ambiguous in this regard. More important, any such ambiguity that might exist would not in any way change plaintiff's federal constitutional claim, which attacks the testing process itself rather than the disciplinary process that a positive test result might trigger.

state adjudication." *Pullman*, 312 U.S. at 500, 61 S.Ct. at 645.

The district court's decision to abstain relied not upon any ambiguity in Rule 111 itself, but upon a variant of the *Pullman* doctrine holding that abstention may be appropriate when "the uncertain status of local law stems from the unsettled relationship between the state constitution and a statute." *Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975). Here, the district court reasoned that Rule 111 might be held violative of the Massachusetts Constitution's Declaration of Rights, Article 14, which declares in relevant part that "[e]very subject has the right to be secure from all unreasonable searches, and seizures, of his person...." The Massachusetts Supreme Judical Court has held that Article 14 "provides more substantive protection to criminal defendants than does the Fourth Amendment in the determination of probable cause." *Commonwealth v. Upton*, 394 Mass. 363, 373, 476 N.E.2d 548, 556 (1985). On this basis the district court found "a real possibility that Rule 111 could be held to violate Article 14 regardless of whether or not it violates the Fourth and Fourteenth Amendments." *Guiney*, 654 F.Supp. at 1299. The district court thus abstained, giving the Massachusetts courts an opportunity to consider the state constitutional question and thereby possibly to alter or moot the federal constitutional question.

We think the district court construed too broadly the circumstances in which abstention is appropriate for the purpose of obtaining an authoritative interpretation of a state constitutional provision. In *Harris County*, 420 U.S. 77, 95 S.Ct. at 872, the issue was a unique Texas constitutional provision granting job security to constables and justices of the peace. Similarly, in *Reetz v. Bozanich*, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970), the Court ordered abstention in order to obtain a construction of unique Alaska state constitutional provisions protecting fishing rights. And in *City of Meridian v. Southern Bell Tel. & Tel. Co.*, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959) (per curiam),

abstention was appropriate because the case involved a unique Mississippi constitutional provision providing that utilities, through their own conduct, could forfeit state-granted contract rights. *See Southern Bell Tel. & Tel. Co. v. City of Meridian*, 154 F.Supp. 736, 737–38 (S.D.Miss.1957) (discussing Section 179 of the Mississippi constitution), *aff'd*, 256 F.2d 83 (5th Cir. 1958), *vacated and remanded*, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959) (per curiam).

■ Under *Harris County, Reetz,* and *City of Meridian*, it is not the uniqueness *per se* of a state constitutional provision that makes abstention appropriate. These cases merely demonstrate that state constitutional provisions that are unique are, for that very reason, less likely to have been authoritatively construed by the state's highest court and less likely to be familiar to federal courts than are state constitutional provisions that are directly parallel to federal constitutional guarantees. In other words, where the state constitutional provision bearing on a case is unique, there is more likely to be an "unsettled relationship between the state constitution and a statute." *Harris County*, 420 U.S. at 84, 95 S.Ct. at 876. Still, it is only "where the challenged statute is part of an integrated scheme of related constitutional provisions, statutes, and regulations, *and* where the scheme as a whole calls for clarifying interpretation by the state courts" that abstention is appropriate. *Harris County*, 420 U.S. at 85 n. 8, 95 S.Ct. at 876 n. 8 (emphasis added). If, despite the provision's uniqueness, no such clarifying interpretation is necessary, then there is no reason to abstain; the federal court may simply proceed to apply state law, if this will alter or moot the federal constitutional claim.

■ This doctrine of abstention has its corollary in the rule that "abstention is *not* required for interpretation of *parallel* state constitutional provisions." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 237 n. 4, 104 S.Ct. 2321, 2327 n. 4, 81 L.Ed.2d 186 (1984) (citing cases) (emphasis added). This rule simply recognizes that

where state and federal constitutional provisions are parallel, the state provision is unlikely to be any more ambiguous than the federal provision, and abstention is unnecessary.[2] Thus the Court has "declined to order abstention where the federal [constitutional] claim was not complicated by an unresolved state-law question, even though the plaintiffs might have sought relief under a similar provision of the state constitution." *Harris County*, 420 U.S. at 84 n. 8, 95 S.Ct. at 876 n. 8 (explaining *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971)). A contrary result "would convert abstention from an exception into a general rule." *Examining Bd. of Engineers, Architects and Surveyors v. Flores de Otero*, 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed. 2d 65 (1976) (footnote omitted). It would require in most cases that state remedies be exhausted before a federal court could act to vindicate federal constitutional rights—a requirement that the Court has consistently rejected. *See Steffel v. Thompson*, 415 U.S. 452, 472–73, 94 S.Ct. 1209, 1222–23, 39 L.Ed.2d 505 (1974); *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed.2d 492 (1961).

■ In the instant case, the relevant provision of Article 14, the state constitutional provision that led the district court to abstain, is almost exactly parallel to the fourth amendment, on which plaintiff predicated his claim.[3] We are unaware of any case in which these two provisions have been interpreted differently. True, the Supreme Judicial Court has held that Article 14 "provides more substantive protection to criminal defendants than does the Fourth Amendment *in the determination of probable cause.*" *Commonwealth v. Upton*,

394 Mass. 363, 373, 476 N.E.2d 548, 556 (1985) (emphasis added). But *Upton* itself applied only to determinations of probable cause for the issuance of a search warrant; it did not signal that Article 14 jurisprudence would thenceforth diverge in all respects from fourth amendment jurisprudence. In particular, nothing in *Upton* indicated that warrantless searches and seizures, such as those permitted by Rule 111, would be judged against an Article 14 standard of reasonableness that is any higher than the prevailing fourth amendment standard.

We note, moreover, that in a post-*Upton* decision involving claims under both Article 14 and the fourth amendment, the Supreme Judicial Court has held that "[a]lthough the Massachusetts Declaration of Rights may afford greater protection to an individual than the protection afforded by the United States Constitution, ... the same factors are material to a consideration of the constitutionality under either document of a roadblock stop of motor vehicles for the purpose of detecting drunk drivers." *Commonwealth v. Trumble*, 396 Mass. 81, 86, 483 N.E.2d 1102, 1105 (1985) (quoting *Commonwealth v. McGeoghegan*, 389 Mass. 137, 141 n. 2, 449 N.E.2d 349, 352 n. 2 (1983) (citations omitted)). The *Trumble* court went on to analyze the challenged roadblocks using a mixture of state and federal precedent.

We find *Trumble* particularly significant because the Article 14 and fourth amendment questions raised in that case are similar to the fourth amendment questions at issue in the instant case. Broadly speaking, both cases involve balancing the individual's right to be free of arbitrary searches and seizures against the public

---

**2.** Even if there is substantial question as to how parallel state and federal provisions affect a given case, the fact that they are parallel suggests that there is little to be gained by a federal court's abstaining simply to permit resolution of the case on state constitutional rather than federal constitutional grounds. This is because parallelism, in practice, means that state courts will look to federal precedent in interpreting parallel state constitutional provisions; abstention would thus mean only that the result would hang on a state rather than a federal peg. We question whether the policies of avoiding unnec-

essary federal constitutional decisions and state-federal friction would really be served by resorting to such a time-consuming sleight-of-hand.

**3.** Article 14 declares in relevant part that "[e]very subject has the right to be secure from all unreasonable searches, and seizures, of his person...." The fourth amendment declares in relevant part that "[t]he right of the people to be secure in their persons ... against unreasonable searches and seizures, shall not be violated...."

interest in detecting substance abuse in situations where such abuse could be particularly dangerous to the rights—indeed, the lives—of others. *Trumble* thus indicates that the Massachusetts courts would likely approach an Article 14 challenge to Rule 111 in much the same way that a federal court would approach a challenge to Rule 111 under the fourth amendment. And where federal and state approaches are harmonious, there is little risk of "needless friction with state policies," *Pullman*, 312 U.S. at 500, 61 S.Ct. at 645; thus the necessary predicate for *Pullman* abstention is wanting.

Even if we could not look to *Trumble* for reassurance that Article 14 and the fourth amendment operate in parallel fashion as to plaintiff's challenge to Rule 111, we would still conclude that the two provisions are sufficiently parallel so as to render abstention inappropriate. Where the constitutional provisions at issue are facially parallel, as here, we do not think abstention justified by the mere *possibility* of divergence from parallelism, or by the fact that the provisions have diverged in another context, as exemplified here by *Upton*.[4] We think the logic of *Pullman* requires some more specific indication that state law is genuinely unsettled before a federal court should stay its hand. A plaintiff's choice to pursue a federal remedy in a federal forum should not be lightly overturned.

### III.

◼ The district court offered a second reason for abstention. In the court's view, Rule 111 could survive a federal constitutional challenge only if defendant could show a compelling need outweighing the fourth and fourteenth amendment interests at stake. The court noted that

[t]his burden might arguably be satisfied either (1) by evidence offered in the case sub judice that supports a fact finding that such a compelling need exists because of circumstances distinctive to the Commonwealth of Massachusetts or the Boston Police Department, or (2) by a showing that such a compelling need exists in police departments generally throughout the United States because of facts common to such departments generally.

*Guiney*, 654 F.Supp. at 1300. The court thus determined that in order to resolve the federal constitutional claim it might have to assess whether a compelling need existed at the national level that could justify Rule 111. The court termed this assessment a "non-adjudicative factfinding" which would have precedential value in other cases. *Id.* at 1300–01. The court felt that such a precedent-setting non-adjudicative factfinding incident to resolving federal constitutional claims should be avoided if the case could be resolved by the Massachusetts courts on state constitutional grounds. *Id.* at 1302. Moreover, resolving the case on state rather than federal grounds might involve an assessment of statewide rather than nationwide conditions and interests. The court felt that this circumstance weighed in favor of abstention because the Massachusetts courts would be better attuned to the nature and extent of the drug problem at the state level and would be less likely to be distracted by nationwide considerations. *Id.*

The question whether Rule 111 should be judged against conditions at the national, state, or local levels has not been briefed on this appeal, and we express no opinion upon it. Assuming without deciding that the district court was correct in framing the constitutional inquiry in terms of compelling need, we conclude that whatever

---

4. The Supreme Court has frequently stressed that abstention is not justified by the mere possibility that a state court *might* interpret a state statute so as to alter or moot a federal constitutional question; abstention is only appropriate where state law is genuinely unsettled. *E.g., Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 237, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). We think the same rule applies where the assert-

edly "uncertain status of local law stems from the unsettled relationship between the state constitution and a statute." *Harris County,* 420 U.S. at 84, 95 S.Ct. at 875. Only where divergence is likely, yet the nature or extent of the divergence unclear, would abstention be warranted. *Cf. McRedmond v. Wilson,* 533 F.2d 757, 760–64 (2d Cir.1976).

the proper assessments involved in that inquiry, the district court should have undertaken them.

Assuming *arguendo* that the proper focus is on national conditions, we are not persuaded that "to address nationwide non-adjudicative fact issues incident to adjudication of the Fourth and Fourteenth Amendment claims," *id.*, is to do anything other than to adjudicate those same claims. This is because the type of finding about which the district court was concerned was not a purely factual finding that a drug problem of a given magnitude exists at the national level, but instead a "non-adjudicative fact finding of compelling need that outweighs intrusions on privacy...." *Id.* at 1301. We have difficulty distinguishing such a "finding," which clearly involves legal as well as factual assessments, from an actual resolution of the federal constitutional claims. Thus the possibility of resolving this case on state constitutional grounds no more justified avoidance of nationwide non-adjudicative factfindings than it justified abstention on the federal constitutional claims themselves.

■ Alternatively, assuming that the proper focus in adjudicating the federal claims is on the particular nature and extent of the drug problem at the state or local levels, we do not share the court's concerns about its potential insensitivity to conditions at those levels. We are unaware of any case in which a state court's assertedly greater sensitivity to state or local conditions has been held to justify federal abstention. Moreover, federal courts are frequently called upon to weigh the strength of state interests, and the care with which the state has crafted the means to vindicate those interests, against the resulting burdens on individual rights. We do not think it can fairly be said that in so doing they have consistently either undervalued or overvalued the state interests at issue. The efforts of the district court in this case to identify possible sources of state-federal friction demonstrate an acute sensitivity to the federalism concerns underlying *Pullman.* We are confident that this same sensitivity will enable the court,

on remand, to focus on assessing the relevant conditions without being distracted by what the court determines to be extraneous considerations and overbroad assumptions.

### IV.

■ Defendant offers two additional reasons, not relied upon by the district court, in support of dismissal; we dispose of these summarily. First, defendant suggests that abstention is appropriate based upon the principles first announced in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (holding that federal courts should abstain from enjoining state criminal proceedings, absent bad faith, harassment, or a patently invalid state statute). But plaintiff here does not seek to enjoin any proceeding—pending or threatened, criminal or civil. Rather, plaintiff seeks to enjoin defendant from forcing police officers to give urine samples without probable cause. Thus *Younger* and its progeny have no application here.

Second, defendant suggests that dismissal is appropriate because an action raising similar issues is currently pending in state court. We assume defendant's argument is based on *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976), which held that where simultaneous federal and state proceedings concerning the same matter are pending, dismissal of the federal case might be appropriate in exceptional circumstances. We find *Colorado River* inapplicable because the pending state proceeding apparently does not concern the "same matter"; it concerns drug testing of police recruits, but does not concern Rule 111, which is at issue here.

*Vacated and remanded.*