# United States Court of Appeals
## For the First Circuit

No. 00-2506

FORD MOTOR COMPANY,

Plaintiff, Appellant,

v.

MEREDITH MOTOR COMPANY, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Paul J. Barbadoro, U.S. District Judge]

Before

Torruella, Circuit Judge,

Campbell, Senior Circuit Judge,

and Schwarzer,[*] Senior District Judge.

Nicholas T. Christakos, with whom Sutherland Asbill & Brennan LLP and Bryan M. Haynes, were on brief, for appellant.
Stephanie A. Bray, with whom Wiggin & Nourie, P.A. and Gregory A. Holmes, were on brief, for appellee.

[*]  Of the Northern District of California, sitting by designation.

August 6, 2001

**TORRUELLA, Circuit Judge.** Appellee Meredith Motor Company ("Meredith") filed a protest with the New Hampshire Motor Vehicle Industry Board (the "Board") pursuant to that state's Motor Vehicle Franchise Act (the "Act"), N.H. Rev. Stat. Ann. § 357-C, following appellant Ford Motor Company's ("Ford") decision to relocate a competing dealer into Meredith's market area. While that proceeding was pending, Ford filed this action in federal district court, seeking a declaration that the Act is not retroactive and, in the alternative, that retroactive application of the Act would violate the Contract and Due Process Clauses of the Constitution. The Board found Ford in violation of the Act and, shortly thereafter, the federal district court issued an order declaring that the Act was intended to be applied retroactively and that such application was constitutional. Ford appealed the Board's decision to the New Hampshire Superior Court and brings this appeal from the decision of the district court. Because the constitutional questions raised in this appeal rest on questions of state law that may be resolved by the New Hampshire state courts, we hold that Pullman abstention is proper in this proceeding. See R.R. Comm'n v. Pullman Co., 312 U.S. 496 (1941).

## I.

Ford is a Delaware Corporation with its principal place of business in Dearborn, Michigan. Meredith is a New Hampshire Corporation that has been doing business as an authorized Ford full

sales and service dealership in Meredith, New Hampshire since 1957. On June 1, 1972, Ford and Meredith executed a Sales and Service Agreement (the "Agreement") that was to last an indefinite period. The parties made several changes to the Agreement over the years, the earliest dated May 20, 1974 and the latest dated January 15, 1998. Under the Agreement, Meredith's "dealer locality" consists of seventeen post office communities in New Hampshire, including the town of Plymouth.

## A. The Motor Vehicle Franchise Act

The New Hampshire legislature first adopted a Motor Vehicle Franchise Act in 1973 which was codified as chapter 357-B. See 1973 N.H. Laws 330:1 (repealed 1981). Chapter 357-B did not expressly give a dealer the right to challenge a manufacturer's redefinition of its relevant market area. It did, however, prohibit a manufacturer from engaging in "any action which is arbitrary, in bad faith, or unconscionable and which causes damages to any of said parties or to the public." Id. In addition, it imposed restrictions on a manufacturer's ability to grant "a competitive franchise in the relevant market area previously granted to another franchise." Id.

In 1981, the New Hampshire legislature repealed chapter 357-B and replaced it with § 357-C. By an amendment effective January 1, 1997, the current statute provides for a Motor Vehicle Industry Board to enforce the chapter's provisions. Under § 357-C, moreover, a manufacturer must have "good cause" to alter a dealer's relevant market

-4-

area. N.H. Rev. Stat. Ann. § 357:C-3 III(o). The statute also requires a manufacturer to notify a dealer of any proposal to add or relocate a competing dealership within the dealer's relevant market area. Id. at § 357-C:9 III. With respect to the agreements covered by § 357-C, the law states the following:

> I. All written or oral agreements of any type between a manufacturer, or distributor or motor vehicle dealer shall be subject to the provisions of this chapter, and provisions of such agreements which are inconsistent with this chapter shall be void as against public policy and unenforceable in the courts of this state.
>
> II. Before any new selling agreement or amendment thereto involving a motor vehicle dealer and such party become effective, the manufacturer, distributor, distributor branch or division, factory branch or division, or agent thereof shall, 90 days prior to the effective date thereof, forward a copy of such agreement or amendment to the attorney general and to the dealer.
>
> III. Every new selling agreement or amendment made to such agreement between a motor vehicle dealer and a manufacturer or distributor shall include, and if omitted, shall be presumed to include, the following language: "If any provision herein contravenes the valid laws or regulations of the state of New Hampshire, such provision shall be deemed to be modified to conform to such laws or regulations; or if any provision herein, including arbitration provisions, denied or purports to deny access to the procedures, forums, or remedies provided for by such laws or regulations, such provisions shall be void and unenforceable; and all other terms and provisions of this agreement shall remain in full force and effect."

Id. § 357-C:6.

**B.  The Dispute**

Fuller Ford, Inc. ("Fuller") became a Ford dealer in Bristol, New Hampshire in December 1993.  In 1997, Ford attempted to relocate Fuller to a facility in Plymouth.  To accomplish this relocation, Ford removed Plymouth from Meredith's market area and assigned it to Fuller. Meredith challenged the proposed relocation to the Board in February 1998.  Meredith subsequently amended its protest to include a challenge to Ford's decision to realign Meredith's market area under § 357-C:3 III(o).  In its response to the Board, Ford noted an "additional threshold issue arising under the New Hampshire and United States Constitutions regarding whether the statute, and in particular the 1996 amendments thereto, can be applied retroactively to materially alter the pre-existing contractual rights of private parties such as Ford and Meredith."  To this end, Ford presented as an issue for the Board "[w]hether application of the statute in the circumstances of this cases constitutes an unconstitutional retroactive impairment of the contracting parties' rights."

In its decision and order dated August 16, 2000, the Board noted Ford's position that "the application of RSA 357-C:3, III(o) to its franchise agreement with [Meredith] . . . would be an unconstitutional retrospective application of law because the contract predates the adoption of Sections 9, I and 3, III(o)."  The Board then

examined the legislative purpose behind § 357-C:3 III(o) and found that it "merely made express the result that logic and fairness naturally implied" from the bad faith language included in the statute's predecessor. The Board concluded that "[i]t would be illogical to conclude that RSA 357-C, III(o) should be inapplicable because it was enacted after 1980 . . . ."[1] Though it did not elaborate on its rationale, the Board also stated that subjecting Ford to the requirements of § 357-C "impair[ed] no vested private contract right of Ford's." Finally, the Board concluded that, on the merits, "Ford failed to act in good faith when it decided to realign [Meredith's] dealer locality for reasons other than the criteria specified in the Franchise Agreement, and by not disclosing its true intentions regarding Plymouth [to Meredith] before December 15, 1997." Ford appealed the Board's decision to the New Hampshire Superior Court, where it is currently pending.

## C.  The Federal Action

The action that is the subject of this appeal was filed in the federal district court for the District of New Hampshire on September 28, 1999, while the Board decision was pending.[2] Eight days

---

[1] The Board found that the Agreement was effectively amended in 1980 and thus used this year as the reference point for applying the statute.

[2] In addition to Ford's request for declaratory relief, Meredith filed counterclaims alleging that Ford's actions violated § 357-C and the Agreement. Ford moved to dismiss the counterclaims, but the district

-7-

after the Board issued its decision, the district court entered judgment in favor of Meredith.  The district court decision did not rely upon the Board's order, although a copy had been forwarded to the court.  Instead, the court concluded that the language of § 357-C:6 was "a clear and unqualified statement of legislative intention to subject both new and existing dealer agreements to the Act's general regulatory requirements."  <u>Ford Motor Co.</u> v. <u>Meredith Motor Co.</u>, No. 99-456-B at 14 (D.N.H. Aug. 24, 2000).  The court also found that the parties' indemnification agreement in 1978 constituted a new contract; since the law in effect at that time was sufficient to make the subsequent "good cause" requirement foreseeable, any contractual impairment was not constitutionally "significant."  <u>Id.</u> at 25-26.  Finally, the court held that the retroactive application of the statute was justified by a legitimate state interest in protecting dealers from manufacturers, and thus did not violate due process.  <u>Id.</u> at 28.

## II.

It is well established that "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule."  <u>Colo. River Water Conservation Dist.</u> v. <u>United States</u>, 424 U.S. 800, 813 (1976);

---

court denied the motion.  In order to expedite review of the constitutional issues, however, the parties jointly moved the court to enter judgment only as to Ford's principal claims, which the court also declined to do.  Meredith then stipulated to a dismissal without prejudice of its counterclaims and the court entered a final judgment on Ford's claims on November 21, 2000.

see also Pustell v. Lynn Pub. Sch., 18 F.3d 50, 53 (1st Cir. 1994);

Guiney v. Roache, 833 F.2d 1079, 1081 (1st Cir. 1987); Santasucci v.

Gallen, 607 F.2d 527, 528 (1st Cir. 1979).  However, "[a]mong those

cases that call most insistently for abstention are those in which the

federal constitutional challenge turns on a state statute, the meaning

of which is unclear under state law."  Harris County Comm'rs Court v.

Moore, 420 U.S. 77, 84 (1974).  Under the principle set forth in

Railroad Commission v. Pullman Co., 312 U.S. 496 (1941), a federal

court confronted with such circumstances "should stay its hand in order

to provide the state court an opportunity to settle the underlying

state-law question and thus avoid the possibility of unnecessarily

deciding a constitutional question."  Harris County, 420 U.S. at 84.

Pullman abstention thus "serves a dual purpose: it 'avoid[s] the waste

of a tentative decision as well as the friction of a premature

constitutional adjudication.'"  Guiney, 833 F.2d at 1081 (quoting

Pullman, 312 U.S. at 500); see also Pustell, 18 F.3d at 53 (noting that

abstention also "promot[es] the principles of comity and federalism by

avoiding needless federal intervention into local affairs").

We believe that Pullman abstention is appropriate in this

case.[3] To determine this, we consider two factors: (1) whether there

_____

[3] Although the district court did not address the issue of abstention, we note that it was raised in the pleadings below and at oral argument.  In any event, a court may raise the issue of abstention sua sponte.  Pustell, 18 F.3d at 51 n.1 (citing Bellotti v. Baird, 428 U.S. 132, 143 n.10 (1976)).

-9-

is substantial uncertainty over the meaning of the state law at issue; and (2) whether a state court's clarification of the law would obviate the need for a federal constitutional ruling. Rivera-Puig v. García-Rosario, 983 F.2d 311, 322 (1st Cir. 1992). Here, the applicability of the state statute to contracts formed before its passage is unclear: this issue forms the crux of the dispute between Ford and Meredith and neither party has pointed to an authoritative New Hampshire decision that resolves this ambiguity.[4] Ford's federal claims, moreover, turn entirely on its statutory claim; the Contracts and Due Process Clauses are implicated only if § 357-C is found to be retroactive. Consequently, "[a] dispositive state court interpretation of this issue

---

[4] At least one federal court has been faced with the question of whether § 357-C is retroactive. In dismissing the case for resolution of this unsettled point in the state courts, the court noted that:

> New Hampshire forums are better suited for resolution of these state-law issues than this court is. The New Hampshire Motor Vehicle Board has substantial expertise in this area, having been created by the New Hampshire legislature for the purpose of adjudicating, among other disputes within its jurisdiction, those over motor vehicle franchises. A decision by the Board may be reviewed by New Hampshire state courts, which have significantly more experience with New Hampshire law than does this court.

Subaru of New England, Inc. v. Lakes Subaru, Ltd., No. 99-10175, slip op. at 7 (D. Mass. Apr. 26, 1999) (granting motion to dismiss based on Colorado River). The court also emphasized that "New Hampshire has manifested in RSA § 357-C a particular interest in the uniform, consistent application of that statute to those involved in motor vehicle sales in New Hampshire," id. at 5, which provides additional support for abstention in this case as well. See Pustell, 18 F.3d at 54 (considering whether state law at issue is "a matter of particularly local concern"); accord Santasucci, 697 F.2d at 529.

-10-

could eliminate entirely the need to address the constitutional issues."  Pustell, 18 F.3d at 53.

A third factor counsels in favor of abstention.  "Where there is an action pending in state court that will likely resolve the state-law questions underlying the federal claim, [the Supreme Court has] regularly ordered abstention." Harris County, 420 U.S. at 83 (emphasis added); see also Romany v. Colegio de Abogados de P.R., 742 F.2d 32, 42 (1st Cir. 1984); Santasucci, 607 F.2d at 529.  Since the filing of its federal court action, Ford has appealed the decision of the Board to the New Hampshire Superior Court.  According to Ford, the state court proceedings are irrelevant to the instant appeal.[5]  We disagree.

The outcome of the state proceedings could moot the federal issues in two ways.  First, the Board's decision was based in part on an initial determination that the Act is retroactive.  Indeed, a good portion of the Board's decision is devoted to examining the history and purpose of § 357-C and concluding that Ford is subject to its provisions.  It is almost certain that, in reviewing the merits of the Board's decision, the New Hampshire courts will address the threshold issue of whether the Act is even applicable at all.  If the courts

---

[5] Ford highlights that one of the issues on appeal is whether the Board had authority to address its constitutional claims.  However, Ford has also appealed the decision itself, and the question of retroactivity was squarely presented to and resolved by the Board (albeit not based on the statutory interpretation espoused by Ford).  Thus, a conclusion that the Board lacked authority to address the constitutional claims would not preclude review of the retroactivity issue.

-11-

accept Ford's interpretation of the statute on this point, there is no need to reach the constitutional issues. Alternatively, Ford has conceded at oral argument that a favorable ruling on the merits would render its federal case moot. That is, should the state courts find that Ford did have good cause to realign Meredith's relevant market area and relocate another dealer to Plymouth, the controversy underlying its federal constitutional claims would cease to exist. In either case, a federal ruling on the state law claims would, at this juncture, be "a forecast rather than a determination," Pullman, 312 U.S. at 499, "a tentative answer which may be displaced tomorrow by a state adjudication." Id. at 500.

In addition, there remain important disputes of fact relevant to the statutory claim. See, e.g., Santasucci, 607 F.2d at 529 (stating that the presence of disputed factual issues underlying a state-law claim reinforces the desirability for the case to proceed through the normal state court system). For example, the parties do not agree on when their current contract came into effect. Ford asserts that the Agreement has not been significantly modified since 1972, while Meredith claims that amendments made as late as 1990 created a new contract between the parties. In its order, the Board found that Ford's acknowledgment of a change in management in 1980 "effectively amended" the Agreement and made that year the reference point for the application of the Act. For its part, the district court

concluded that the Agreement was significantly modified by an indemnification amendment in 1978, a determination that was significant to its constitutional contract impairment analysis. In the event that the New Hampshire courts uphold the Board's decision, the factual grounds for doing so could "materially alter the nature of the problem" and affect our resolution of the constitutional issues.[6] Romany, 742 F.2d at 40 (quoting Harrison v. NAACP, 360 U.S. 167, 177 (1959)).

Finally, we take into consideration the federalism concerns supporting abstention. In particular, the implications of granting Ford its requested relief would be to declare that the Board lacked jurisdiction to hear the protest in the first instance (and to vacate its rulings), an outcome that would "disrupt substantially the review proceedings now pending before the [Superior Court]." Bettencourt, M.D. v. Bd. of Registration in Med., 904 F.2d 772, 777 (1st Cir. 1990). Normally, a federal proceeding that would interfere with an ongoing state judicial proceeding calls for Younger abstention. See Younger v. Harris, 401 U.S. 37, 43-54 (1971); see also Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 10-14 (1987) (applying Younger to private litigation that involves important state interests). Here, the avoidance of "needless friction" between the federal and state proceedings carries

---

[6] Indeed, should the state courts conclude that the Agreement was significantly amended after 1981, even the retroactivity question could be moot.

some weight in our decision to abstain from deciding this case.  See Pullman, 312 U.S. at 499-500.

The possibility that the New Hampshire courts may not address the constitutional issues is inconsequential under Pullman. This is so because a "stay pursuant to Pullman abstention is entered with the expectation that the federal litigation will resume in the event that the plaintiff does not obtain relief in state court on state-law grounds."  Rivera-Puig, 983 F.2d at 322 (quoting Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 10 n.9 (1983)); see also Pub. Serv. Co. of N.H. v. Patch, 167 F.3d 15, 24 (1st Cir. 1998) (observing that "Pullman abstention calls for deferral of a case rather than dismissal"); Pustell, 18 F.3d at 54-55 (abstaining on Pullman grounds but retaining jurisdiction pending a decision by the Massachusetts state court on proper interpretation of statute). Accordingly, we hold that the district court should abstain in the current proceedings, retaining jurisdiction pending final review of the Board's decision in the New Hampshire state courts.  See Pustell, 18 F.3d at 54-55.

The decision of the district court is **vacated** and the case **remanded** for proceedings consistent with this opinion.