**CORPORACION INSULAR de SEGUROS, Plaintiff,**

v.

**Hon. Juan Antonio GARCIA, in his official capacity as Commissioner of Insurance of the Commonwealth of Puerto Rico, Defendant.**

**Civ. No. 87–0431(RLA).**

United States District Court,
D. Puerto Rico.

Feb. 24, 1988.

Jesús Rabell Méndez, Harry R. Nadal Arcelay, Cancio, Nadal & Rivera, San Juan, P.R., Sheldon H. Nahmod, Chicago, Ill., for plaintiff.

José Luis González Castañer, Luis N. Blanco Matos, Pedro A. Del Valle, Dept. of Justice, Federal Litigation Div., San Juan, P.R., for defendant.

**OPINION AND ORDER**

ACOSTA, District Judge.

Plaintiff, Corporación Insular de Seguros, filed this 42 U.S.C. § 1983 action against the Puerto Rico Commissioner of Insurance asking this Court to declare Puerto Rico Act No. 4, of December 30, 1986, 26 L.P.R.A. §§ 4101 *et seq.* unconstitutional. Act. No. 4 authorized the creation and operation of a medical malpractice insurance syndicate generally to ensure that doctors and health institutions have continued access to adequate insurance coverage and specifically to provide insurance coverage to high risk professionals.

Plaintiff alleges that Act. No. 4 violates the taking, due process and equal protection clauses of—as well as the First Amendment to—the United States Constitution. A few days after filing this federal action, plaintiff instituted a parallel suit in Puerto Rico Superior Court raising only Puerto Rico constitutional claims. *See Corporación Insular de Seguros v. Commonwealth of Puerto Rico, et al.,* Civil No. 87–1658 (902), Superior Court of Puerto Rico, San Juan Section.

Before the Court is defendant's motion to dismiss the complaint or to otherwise stay the present action pending resolution of the parallel State action. The motion is premised on various doctrines of abstention. Succintly, defendant argues that the Court should reject its original jurisdiction, *see* 28 U.S.C. §§ 1331 and 1343(a)(3), over this controversy in favor of the ongoing and more advanced proceedings[1] in the Superior Court. This, argues defendant, would promote comity, avoid piecemeal litigation, and let the state courts, with their admittedly greater sensitivity to local issues, deal with an uninterpreted but otherwise unambiguous state statute which addresses important state health issues.

Plaintiff, in opposition, argues that since it bifurcated its prosecution so that state claims are heard in state court and federal claims in federal court there are no compelling concerns justifying abstention.

After a careful study of the record, the pertinent law, and the arguments made by counsel at a hearing held on January 5, 1988, we conclude that defendant has not shown any special circumstances warranting abdication of federal jurisdiction over the present cause. We will accordingly deny defendant's motion to dismiss the complaint or to stay the proceedings.[2]

## DISCUSSION

### A. The Abstention Doctrine

The only issue before the Court is whether or not to abstain from hearing the present case.

[1]. On December 23, 1987, Judge Abner Limardo of the San Juan Superior Court issued a comprehensive order denying plaintiff's request for a preliminary injunction. The request for injunction was based on provisions of the Puerto Rico Constitution that mirror the federal constitutional provisions at issue in the case at bar.

[2]. On October 28, 1987, the Court granted defendant's motion to stay any further discovery in this case pending our resolution of the abstention issue (*see* docket No. 31). Our determination today effectively lifts that stay.

Since defendants have raised just about all of the categories of abstention to support their motion to dismiss the instant complaint, we will discuss all theories of abstention and quickly apply each type to the facts of this case.

■ Abstention, of which there are various categories, is a sharply circumscribed exception to "the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). The various categories of abstention reflect a "complex of considerations designed to soften the tensions inherent in a system that contemplates parallel judicial processes." *Pennzoil Co. v. Texaco, Inc.,* — U.S. —, 107 S.Ct. 1519, 1526, fn. 9, 95 L.Ed.2d 1 (1987). The circumstances, or "complex of considerations," that usually compel abstention are the following: (1) When there are pending criminal state proceedings, *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed. 2d 669 (1971); (2) When the state's interest in a pending local civil proceeding is so important that exercise of the federal judicial power would disregard the comity between the states and the National Government, *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 603–605, 95 S.Ct. 1200, 1207–1208, 43 L.Ed.2d 482 (1975) (extending *Younger* type abstention to civil proceedings); (3) When abstention would avoid an unwarranted determination of federal constitutional questions involved in the interpretation of an unclear state statute, *Railroad Comm'n of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) or that the federal-court decision would be rendered advisory or the litigation underlying it meaningless, *Moore v. Sims,* 442 U.S. 415, 428, 99 S.Ct. 2371, 2379, 60 L.Ed. 994 (1978); (4) When federal intervention regarding a direct challenge to the constitutionality of an unambiguous state statute, i.e., one that is not subject to a limiting construction, could potentially disrupt state appellate procedures intimately related to a complex state regulatory process or when transcendental state policies would be seriously undermined, *Burford v. Sun Oil Co.,*

319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); and (5) When there are "exceptional circumstances" weighing in favor of a state court resolution of a particular dispute involving essentially the same property, parties and legal issues in both the state and federal forums such that rejection of federal concurrent or parallel jurisdiction would foment wise judicial administration, comity and the comprehensive disposition of litigation. *Colorado River, supra.*

■ All the doctrines, except that of *Pullman,* require dismissal of the complaint. In addition, a plaintiff who is being denied his choice of a federal forum through the abstention doctrine must always be ensured an adequate and fair opportunity to have his federal claims heard be it in a state forum or in a later federal one. *See Gibson v. Berryhill,* 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); *Aetna Life Ins. Co. v. Lavoie,* 475 U.S. 813, 106 S.Ct. 1580, 89 L.Ed.2d 823 (1986). It is undisputed that state courts can competently adjudicate federal claims; thus the main concern of *Gibson* is to have federal courts initially resolve any allegations of state partiality or bias, particularly regarding any "direct, personal, substantial, pecuniary interest" of the adjudicator, vis-a-vis the plaintiff. *Middlesex Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). No such claims of bias have been made in the case at bar.

The categories of abstention are all interrelated, i.e., they are not "rigid pigeonholes into which federal courts must try to fit cases." *Pennzoil, supra* 107 S.Ct. at 1526, fn. 9. Rather, they all reflect some common values of federalism: respect for state court interpretation of uncertain and difficult state law while ensuring that a plaintiff's federal rights can be adjudicated in a fair and adequate forum; avoiding needless conflict between two sovereignties; and not disrupting a state's efforts to establish a coherent policy with respect to a matter of substantial public concern. In

addition, there is the policy of avoiding federal constitutional issues, yet this seems to have the least controlling effect especially since *Colorado River.*

■ Though *Colorado River* is at times not considered a true abstention-doctrine-case it nonetheless infuses this whole area of judicial self-abnegation with practical concerns of: judicial administration, primary jurisdiction over property and non-duplicative litigation. These concerns seem to put aside the constitutional mootness issues and their concomitant federalist theoretical structures in favor of more practical case management principles. In other words, *Colorado River* appears to condone that the first court to carry the ball and run with it the fastest should not be blocked by the other jurisdiction and thus be the one to score in the adjudication of cases involving federal and state claims and important state interests. Consequently, case management factors are an important consideration in any abstention analysis.

■ A final note on the topic of prerequisites to the application of the abstention doctrine particular to § 1983 actions. It is now established that federal plaintiffs aggrieved by the results of a state trial must pursue their state judicial appeals before going to federal court. *Wooley v. Maynard,* 430 U.S. 705, 710–711, 97 S.Ct. 1428, 1433, 51 L.Ed.2d 752 (1977). In the case at bar, this prerequisite is inapplicable because plaintiff does not seek "to annul the results of a state trial." *Id.* Rather, the *Patsy* rule prevails, to wit: A § 1983 action does not generally require exhaustion of state remedies. *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). Abstention, in any event, should not be required where a case has already been long delayed. *Harris County, supra.*

B. Some Limitations to the Doctrine

Even though all the factors discussed above favoring abstention may be present in a case, the "complex of considerations" underlying the doctrine includes certain case-specific limitations that may force a federal court to retain jurisdiction despite the fact that abstention would be the more courteous and expedient move.

■ There is influential case law to the effect that cases involving civil rights issues, especially in the context of a § 1983 action, are not good candidates for abstention. Since the very basis of a § 1983 action is that the State has done one of its citizens wrong, there is an unspoken tendency on the part of federal courts to hear the case in order to ensure the highest protection of that individual's federal constitutional rights and to preclude any potential bias of having State courts find State agents liable for federal constitutional torts against state citizens. At bottom, there are certain federal constitutional rights that are so important, *e.g.,* civil rights and first amendment free speech rights, that a federal court should not, except in the most extreme circumstances, refuse to hear cases based on them. *See, e.g., Baggett v. Bullitt,* 377 U.S. 360, 379, 84 S.Ct. 1316, 1326, 12 L.Ed.2d 377 (1964); *Dombrowski v. Pfister,* 380 U.S. 479, 492, 85 S.Ct. 1116, 1124, 14 L.Ed.2d 22 (1965); *Marin v. University of Puerto Rico,* 346 F.Supp. 470, 478 (D.P.R.1972).

Another limitation concerns cases requiring declarative rather than injunctive relief. Most of the abstention doctrine, with the possible exception of the *Colorado River* factors—the exception here of itself exemplifying why *Colorado River* is not always considered a true abstention case—is based on the federalistic concern of avoiding unnecessary intrusion into important State affairs. This last concern is true because unnecessary federal judicial interference with state administration is the rationale for the formidable federalism doctrines developed since *Younger* which preclude federal injunctions of particular kinds of pending State proceedings.

The emphasis has always been on intrusion. Thus, most abstention cases have involved injunctions against ongoing state proceedings. Clearly suits for injunctive relief, unlike suits which seek only monetary relief, are highly intrusive into legit-

imate state functions. Not so clear, but perhaps somewhere in the middle of the intrusion scale, are the disruptive effects of suits for declaratory relief. One federal district court has held that the *Colorado River* exceptional circumstances test is inapplicable to declaratory judgment actions because the federal court's duty to exercise its jurisdiction is relaxed (read "discretionary") in the declaratory judgment context. *Hartford Accident & Indemnity Co. v. Hop–On International Corp.*, 568 F.Supp. 1569, 1572 (S.D.N.Y.1983).

The First Circuit has recently agreed in part with the *Hartford Accident* holding insofar as it recognized that "a declaratory judgment action may be dismissed on grounds that are less than 'exceptional'." *Fuller Company v. Ramón I. Gil*, 782 F.2d 306, 309, fn. 3 (1st Cir.1986). But the First Circuit did not want to categorically preclude *Colorado River* type abstention in declaratory judgment cases as did the *Hartford Accident* court. Instead, the First Circuit determined that since "the *Colorado River* factors themselves run substantially parallel to the criteria that historically have been deemed relevant in determining whether to accept or decline jurisdiction over an action brought under 28 U.S.C. § 2201 /the Declaratory Judgment Act/," that a court facing this type of question simply had to apply the *Colorado River* factors rather than forego abstention altogether. *Id.* Thus, the First Circuit found it best to apply the *Colorado River* factors in a declaratory judgment context and we, of course, must follow suit; however, not without first noting with interest, that a declaratory judgment action does appear to be generally considered less intrusive than an injunctive action for purposes of abstention procedures.

In sum, the *Younger* legacy has seen the Supreme Court invoke the abstention doctrine mostly in cases featuring federal plaintiffs lodging broad constitutional attacks on the legitimacy of State civil proceedings instituted against them. *Penzoil Co., supra; Huffman, supra; Middlesex; infra; Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979); *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911,

52 L.Ed.2d 486 (1977); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977). Those cases exemplify exactly the type of high-level federal intrusion into state proceedings that forms the backbone of the abstention doctrine. Such is not the case here where the relief sought is not directed specifically at the pending State proceeding. *See generally Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In other words, here plaintiff has not requested that we enjoin any state civil proceeding pending *against* it. Indeed, plaintiff states that by bifurcating this case it is precisely trying to avoid any such intrusion. (In case where state law question is unambiguous abstention not required "even though plaintiffs might have sought relief under a similar provision of the state constitution.")

Plaintiff certainly had the choice of prosecuting both federal *and* state claims in state court. *See Examining Board v. Flores de Otero*, 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976). Because of the Supreme Court's disposition in *Pennhurst State School v. Halderman*, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), plaintiffs are barred, on sovereign immunity grounds, from asking a federal court to enjoin a state official to conform to state law regardless of the federal court's pendent jurisdiction in the case. Thus, if a plaintiff wishes a federal court to address his federal claims and still wants to prosecute his State claims, bifurcation will be his only option.

Though we cannot fault plaintiff herein for exercising its right to bifurcate the present case we nonetheless wonder if it would not have been more expedient to bring *all* his claims, growing out of what admittedly is the same incident, in state court. Not only would it economize judicial resources and the litigation costs of the parties; but also plaintiff now faces the very real probability, given the state courts' more advanced proceedings, that the state court's fact finding in particular may have an issue-preclusive effect on his § 1983 federal claims. *Migra v. Warren City School Dist. Board of Education*, 465

U.S. 75, 104 S.Ct. 892, 897, 79 L.Ed.2d 56 (1984); *His Excellency, Vincente Cuesnongle v. Hector R. Ramos*, 835 F.2d 1486, 1497 (1st Cir.1987); *Beaver v. Bridwell*, 598 F.Supp. 90, 93 (D.Md.1984).

In any case, that issue is not yet before us and is, therefore, of no relevance to the present abstention question.

Lastly, federal courts have been typically reluctant to abstain from cases that involve only federal constitutional matters, *i.e.*, where there are no pendent State claims and the federal claim itself is not so "entangled in a skein of state law that must be untangled before the federal case can proceed." *Harris County, supra*, 420 U.S. at 84, 95 S.Ct. at 870. This is particularly true in a bifurcated case such as this one where the federal constitutional provisions at play in the federal forum simply mirror those at issue in the state forum. *See Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 237 n. 4, 104 S.Ct. 2321, 2327 n. 4, 81 L.Ed.2d 186 (1984) (abstention should not be used to determine the content of a state constitutional provision which parallels the federal constitution); *see also Wisconsin v. Constantineau*, 400 U.S. 433, 439, 91 S.Ct. 507, 511, 27 L.Ed.2d 515 (1971); *Examining Board v. Flores de Otero*, 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976); *Guiney v. Roache*, 833 F.2d 1079 (1st Cir.1987).

To summarize the pertinent limitations on abstention, we are presently faced with a case that involves only federal constitutional claims that simply mirror those brought in state court under the state constitution. These federal claims involve constitutional rights that have traditionally compelled federal courts to adjudicate the matter despite strong concerns of comity and federalism that would otherwise tip the scales in favor of abstention. Finally, this case, seeking as it does declarative and not injunctive relief, does not constitute the form of heavy-handed intrusion into state judicial or administrative affairs that would normally counsel abstention. Where injunctions are traditionally considered the highest form of federal intrusion, declaratory relief is not.

### C. The Case of Puerto Rico

The discussion of the "complex of considerations" regarding abstention could not be complete without some brief commentary on Puerto Rico's *sui generis* judicial status which has prompted the Supreme Court on several occasions to admonish lower federal courts to exact a form of rigid deference to Puerto Rico courts regarding issues of Puerto Rico law.

Beginning in 1923, in a case concerning the judicial sale of land subject to inheritance rights, Justice Holmes, Jr. wrote for a unanimous court that:

This Court has stated many times the deference due to the understanding of local courts upon matters of purely local concern.... This is especially true in dealing with the decisions of a /Puerto Rico/ court.... Our appellate jurisdiction is not given for the purpose of remodeling the Spanish–American law according to common law conceptions except so far as that law has to bend to the express will of the United States.

*Díaz v. González*, 261 U.S. 102, 105–106, 43 S.Ct. 286, 287, 67 L.Ed. 550 (1923).

Almost 20 years later, Justice Douglas strongly reiterated the rule of deference to Puerto Rico courts:

For over sixty years this Court has consistently recognized the deference due interpretations of local law by (Puerto Rico) courts unless they appeared clearly wrong.... We now repeat once more the admonition. And we add that lip service is not enough. To reverse a judgment of a Puerto Rican tribunal on such a local matter as the interpretation of an act of local legislature, it would not be sufficient, if we or the Circuit Court of Appeals merely disagreed with the interpretation....

*Bonet v. Texas Co. of Puerto Rico, Inc.*, 308 U.S. 463, 470–471, 60 S.Ct. 349, 353, 84 L.Ed. 401 (1940).

Admittedly, neither of these cases dealt directly with the issue of abstention and they were both written during the almost six decades, ending in the 60's, wherein the First Circuit Court of Appeals had appellate jurisdiction over the Puerto Rico Su-

preme Court. Nonetheless, the message of rigid deference by federal courts towards local courts was later wholly grafted on to the abstention doctrine as applied to Puerto Rico. *See, e.g., Fornaris v. Ridge Tool Co.,* 400 U.S. 41, 44, 91 S.Ct. 156, 158, 27 L.Ed.2d 174 *(1970); Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974) (stressing the doctrine of abstention regarding constitutional challenge to Puerto Rico forfeiture statute).

The lesson was not lost to the lower federal courts. In the 1966 case of *Wackenhut v. Aponte,* an action for injunctive relief against enforcement of the Private Detectives Act of Puerto Rico, the United States District Court for Puerto Rico stated:

> We think that the application of the doctrine of abstention is particularly appropriate in a case ... involving the constitution and validity of a statute of the Commonwealth of Puerto Rico. For a due regard for the status of that Commonwealth under its compact with the Congress of the United States dictates, we believe, that it should have the primary opportunity through its court to determine the intended scope of its own legislation and to pass upon the validity of that legislation under its own constitution as well as under the Constitution of the United States.

266 F.Supp. 401, 405 (D.P.R.1966).

The First Circuit has on at least two occasions stressed the particular value of the abstention doctrine as a way to foment better Puerto Rico-federal relations. For example, in reversing the district court's adjudication of a constitutional challenge to a Puerto Rico statute requiring that lawyers belong and pay dues and stamp fees to the Puerto Rico integrated bar association, the First Circuit stated that the district court:

> should have abstained from reaching the merits ... until the Puerto Rico Supreme Court acted to resolve this unsettled question of local law.... Here we are concerned with the proper relationship between the Federal and Commonwealth

courts, 'functioning as a harmonious whole' ... thus while we appreciate the /constitutional/ concerns of the district court, we think this matter must be approached with deliberation and full respect for the role of the judiciary of the Commonwealth of Puerto Rico.
*Romany v. Colegio de Abogados de Puerto Rico,* 742 F.2d 32, 40 (1st Cir.1984).

Finally, and most recently, the United States Supreme Court has stated that "/a/ rigid rule of deference to interpretations of Puerto Rico law by Puerto Rico courts is particularly appropriate given the unique cultural and legal history of Puerto Rico." *Posadas de Puerto Rico Assoc. v. Tourism Co. of Puerto Rico,* 478 U.S. 328, 106 S.Ct. 2968, 2976 n. 6, 92 L.Ed.2d 266 (1986). This statement was echoed by the First Circuit which appreciably added to it that "/i/ndeed, abstention and certification are especially beneficial in cases involving Puerto Rico law ..." *His Excellency Vincente Cuesnongle v. Hector R. Ramos,* 835 F.2d 1486, 1495 (1st Cir.1987), *supra.*

◼ In summary, we are faced in our analysis of the "complex of considerations" regarding the abstention doctrine with a special factor which is very particular to Puerto Rico. A factor which through various pronouncements and holdings of our higher federal courts compels us to assess the circumstances of this case in the special light of Puerto Rico's *sui generis* status. The factor, by now clear, is that issues of Puerto Rico law, including constitutional interpretations of local statutes, require a "rigid deference" to the actions of local courts. The case law, discussed above, is full of strongly worded admonishments towards deference that seem to underscore a generalized concern that Puerto Rico, given its mixed law jurisdiction (one of the few still active in the world) has suffered a certain and unnecessary amount of disregard towards its juridical roots and processes that cannot be justified in our present federalist system.

◼ Although we are mindful of this concern of extending "our federalism" fully to Puerto Rico and we are extremely supportive of the focus of the opinions dis-

cussed towards a "rigid deference" regarding interpretations of Puerto Rico law by local courts, we are nonetheless convinced that to retain jurisdiction over the present case is not only a result wholly consistent with the *ratio decidendi* of these cases but is one mandated by the United States Congress through 28 U.S.C. § 1331. In other words, the case at bar, though it involves issues of great importance to Puerto Rico, is ruled, as presented, by the United States Constitution. Thus, Puerto Rico is not sovereign over the matter and consequently abstention, in the context detailed above, is out of place. *See Calero–Toledo, supra* 416 U.S. at 672–673, 94 S.Ct. at 2086.

Here the law of Puerto Rico has to "bend to the express will of the United States." *Díaz v. González, supra.* The main reason being that we are not, and will not be, second guessing an interpretation of Puerto Rico courts regarding a local law. No such interpretation has been made. Nor do we need to await one since the federal claims are not complicated by an unresolved state law question nor is the statute ambiguous and subject to a limiting construction. *Examining Board v. Flores de Otero, supra. Cf. Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) (district court should have abstained from interpreting a *unique* Alaska statute which had never been construed by the Alaska courts). We also note, once more, that delay is especially harmful in civil rights cases such as this one where the vindication of constitutional interests may be postponed. Wright, Miller & Cooper, 17 *Federal Practice and Procedure* 465 (1978). To hold otherwise would convert abstention from an exception into a general rule. *Id.; see also Hawaii Housing Authority, supra,* 467 U.S. at 237, 104 S.Ct. at 2327 ("the relevant inquiry is not whether there is a bare, though unlikely, possibility that state courts *might* render adjudication of the federal question unnecessary. Rather, '/w/e have frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction'.") (quoting *Zwickler v. Koota,* 389 U.S. 241, 251, and n. 14, 88 S.Ct. 391, 397, and n. 14, 19 L.Ed.2d 444 (1967)).

Moreover, as we stated above, abstention is not required for interpretation of parallel state constitutional provisions as is the case here. *See Examining Board v. Flores de Otero,* 426 U.S. at 598, 96 S.Ct. at 2279; *Wisconsin v. Constantineau,* 400 U.S. at 433, 91 S.Ct. at 507. This is particularly true when the statute at issue though uninterpreted by the local courts involves constitutional standards that have been extensively discussed in the case law and literature.

Nor are we concerned here with interrupting a complex state regulatory process or reviewing a challenged factual determination by a state agency. *Cf. Medical Malpractice Joint Underwriting Association of Rhode Island v. Mark A. Pfeiffer,* 832 F.2d 240, 244 (1st Cir.1987). Neither is this a case where the state judiciary plays a unique role, or has an exceptional expertise, regarding a statutory procedure. *Cf. Romany v. Colegio de Abogados, supra.* Therefore, it appears that none of the cases discussed above in which abstention has been favored or deference to Puerto Rico courts has been emphasized due to Puerto Rico's unique status is directly on point. There are no special circumstances in the case at bar that would create unneeded and far-reaching tensions between the two sovereignties that would cause us to abnegate our present jurisdictional mandate.

### D. Application of the Types of Abstention to the Present Case

#### 1. *Younger*

The *Younger* type abstention is a doctrine of equitable restraint based upon comity and respect for federalism and dual sovereignty. The basis of *Younger* abstention, which began as an anti-injunction doctrine regarding state criminal proceedings and was later extended to civil proceedings involving important state interests, is to avoid unnecessary and seriously detrimental interference with ongoing state proceedings. But here plaintiff does not seek to enjoin, interfere, or otherwise disrupt the pending Puerto Rico proceeding in which he is also a plaintiff. Instead it has bifur-

cated its prosecution in such a way as to parallel rather than intertwine its federal and state constitutional claims. Therefore, *Younger* abstention is not applicable to the case at bar.

### 2. *Pullman*

*Pullman* abstention applies only where the challenged state law is unclear or ambiguous and is capable of a construction that may avoid the need for a federal court to decide the federal constitutional issues raised. In this case, however, the challenged Act is clear on its face and is not ambiguous.[3] Further, plaintiff challenges Act No. 4 on its face and as applied. And, finally, *Pullman* abstention is improper where, as here, the state statute is challenged under substantially similar (read parallel) federal and state constitutional provisions. *See Harris County, supra; Hawaii Housing Authority, supra.* "This rule simply recognizes that where State and federal constitutional provisions are parallel, the State provision is unlikely to be any more ambiguous than the federal provision, and abstention is unnecessary." *Guiney v. Roache,* 833 F.2d 1079, 1082–83 (1st Cir.1987).

Most, if not all, of plaintiff's federal claims are premised on very clear provisions of Act No. 4. Plaintiff asserts the following federal constitutional violations: taking without just compensation, procedural due process, substantive due process, equal protection and the First Amendment. Plaintiff's taking claim relies on the straight-forward language of the Articles 41.040(9) and (10) of the Act which requires plaintiff to assume significant financial responsibility for its newly created competitor, the Syndicate. Plaintiff's due process claim is based on Articles 41.040(2) and (3) of the Act which preclude plaintiff's representation on the Syndicate's decision making Board of Directors.

Plaintiff's substantive due process claim is based on the contention that there is no rational relation between the Act on its face and as applied, and its declared pur-pose of maintaining a freely competitive market for medical malpractice insurance or that of providing an affordable and available medical malpractice insurance. The equal protection claim is based on the explicit language of the Act which singles out the medical malpractice insurers and insureds for special treatment. Finally, plaintiff's First Amendment assertion is based on Articles 41.040(8), (9), and (10) which unambiguously requires the plaintiff and others to pay the advertising costs of the Syndicate.

A fair reading of Act No. 4 leaves little doubt as to the intent and scope of its provisions. Therefore, an interpretation of its language by a Puerto Rico court is unnecessary and any ensuing delay could be unfairly prejudicial.

In addition, this case, unlike *Harris County,* does not involve a complex regulatory scheme in which there is a close relationship between the challenged statutory provisions which are highly specific and the Puerto Rico Constitution which is much broader. Furthermore, the Puerto Rico constitutional provisions are parallel to those relied on in this federal suit. *See* Sections 4, 7, and 9 of Article II of the Puerto Rico Constitution. Moreover, the Puerto Rico Supreme Court's interpretation of these constitutional provisions relies extensively on analogous United States Supreme Court case law and other federal precedent. *See, e.g., Marina Industrial Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64 (1983) (substantive due process); *León Rosario v. Luis Torres,* 109 D.P.R. 804 (1980) (equal protection); *Ortiz Cruz v. Puerto Rico Racing Board,* 101 D.P.R. 791 (1973) (procedural due process); *Aponte Martínez v. Lugo,* 100 D.P.R. 282 (1971) (free speech); and *E.L.A. v. Márquez,* 93 D.P.R. 393 (1966). Because these provisions are parallel to the federal ones, abstention is not required. *Hawaii Housing Authority, supra,* 104 S.Ct. at 2327 n. 4.

Finally, there are no "special circumstances" warranting *Pullman* abstention

---

**3.** At the hearing held on January 5, 1988, defendant was unable to seriously argue that the statute was ambiguous.

in this case. The interest of avoiding unnecessary federal interference with the implementation of state statutes is minimal since plaintiff herein seeks only declaratory relief. Also, plaintiff's civil right assertions outweigh any of the pronounced interests of the State in leaving a determination of the constitutionality of this statute to state courts.

In conclusion, plaintiff's interest in the prompt vindication of its federal constitutional rights, when considered with the potentially detrimental effect the Act might have on its business, outweigh any interest asserted by defendant in having only the Puerto Rico Superior Court adjudicate this matter. The Act is clear, its provisions are not inextricably intertwined with Puerto Rico constitutional provisions (which simply mirror the federal ones before us), and there are no exceptional circumstances compelling abstention.

### 3. *Burford*

*Burford* abstention may be ordered where "the state has a unified scheme for review of its administrative orders and federal intervention in cases in which diversity is present would have a disruptive effect on the state's efforts to establish a coherent policy on a matter of substantial public concern." 17 Wright, Miller & Cooper, *Federal Practice and Procedure* 485 (1978).

*Burford* itself was a review by a district court of the reasonableness *under Texas state law* of a state commission's permit to drill oil wells. In reversing, the Supreme Court explained that a review of reasonableness by federal courts would have a disruptive effect on state policy because Texas had established its own elaborate review system for dealing with the complexities of oil and gas fields.

The present case is different from *Burford* for four basic reasons. First, unlike *Burford,* plaintiff here is not seeking review of any particular decision of the Commissioner of Insurance or of the Syndicate, but is rather challenging the underlying legislation itself. Second, the case at bar neither challenges nor evades any "unified scheme for review of administrative or-

ders." Third, this is not a diversity case but is rather a federal question case. 28 U.S.C. §§ 1331 and 1343. Finally, there are no significant state law issues implicated in this case because plaintiff challenges Act No. 4 solely on federal constitutional grounds.

Although defendant argues that the present federal claim might, if successful, undermine what is admittedly an important state policy concerning health issues, this assertion by itself cannot control our determination whether or not to abstain. "/T/here is, of course, no doctrine requiring abstention merely because resolution of a federal question may result in the overturning of a state policy." *Zablocki v. Redhail,* 434 U.S. 374, 379 n. 5, 98 S.Ct. 673, 677 n. 5, 54 L.Ed.2d 618 (1978). To abnegate our jurisdictional responsibility simply because we might eventually undermine some policy of the Puerto Rico legislature "would mean as a practical matter that a federal court could never declare a state statute unconstitutional." *Wynn v. Carey,* 582 F.2d 1375, 1383 (7th Cir., 1978). Moreover, we find that though a state policy concerning medical malpractice insurance is important, it is hardly unique to Puerto Rico and, indeed, many states have recently addressed this very same problem. *Cf. Reetz v. Bozanich, supra.*

Defendant also seems to argue that *Burford* abstention should be applied simply in order to obtain a state court interpretation of Act No. 4. But this, as extensively discussed above, would be tantamount to imposing an impermissible exhaustion of state remedies requirement to this Section 1983 action. *See Patsy, supra, cf.* with *Wooley v. Maynard, supra.* (Prerequisite of exhaustion of state appellate procedures in a Section 1983 action is applicable only where plaintiff seeks to annul a state trial).

For these reasons, we decline to abstain on *Burford* grounds.

### 4. *Colorado River*

Defendant's last attempt to convince us abstention is proper is based on *Colorado River* which extolled the virtues of judicial economy, first-placed jurisdiction, and comi-

ty. We find, however, that *Colorado River* is inappropriate here for the following reasons:

1. Neither this Court nor the Puerto Rico court has assumed jurisdiction over any *res* or property as was the case in *Colorado River* itself;

2. Both this court and the Puerto Rico Court are located in San Juan, thus inconvenience to the parties is minimal;

3. Federal law, not Puerto Rico law, governs plaintiff's Section 1983 claims in the case at bar and the provisions of State law are simply parallel to the federal ones. Thus,

> ... the fact that they are parallel suggests that there is little to be gained by a federal court's abstaining simply to permit resolution of the case on State constitutional rather than federal constitutional grounds. This is because parallelism, in practice, means that state courts will look to federal precedent in interpreting parallel state constitutional provisions.... We question whether the policies of avoiding unnecessary federal constitutional decisions and state-federal friction would really be served by resorting to such a *time-consuming* sleight-of-hand.

*Guiney v. Roache*, 833 F.2d at 1083, fn. 2. (Emphasis added.) If it is unnecessarily "time consuming," it cannot be gainsaid that judicial economy is being promoted by application of the *Colorado River* doctrine; and

4. Though there has been greater progress in the Puerto Rico proceeding insofar as a lengthy resolution denying plaintiff's request for a preliminary injunction was issued, such progress is not necessarily substantial nor is this factor, standing alone, sufficient to trigger the *Colorado River* doctrine. Moreover, no injunction is being sought in the present case and although the denial of a preliminary injunction can be seen as a forecast of the likely judgment on the merits, it is still a forecast and nothing more. At present, both courts still have the constitutional merits of this matter under consideration.

In sum, there are no "exceptional circumstances" present in this case to warrant overcoming the "heavily weighted" presumption in favor of the exercise of federal jurisdiction. *See Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 937, 74 L.Ed. 2d 765 (1983).

## CONCLUSION

For the reasons above, we hereby DENY defendant's motion to dismiss or stay this case filed on May 27, 1987 (docket No. 6) based on abstention principles.

In addition, we find in accordance with 28 U.S.C. § 1292(b) that this order involves a controlling question of law as to which there is substantial ground for a difference of opinion and therefore, an immediate appeal, if such is desired by either party, from the order may materially advance the ultimate termination of the litigation.

IT IS SO ORDERED.