Jose **GRANADOS–NAVEDO,** et al., Plaintiffs,

v.

Hector Luis **ACEVEDO,** et al., Defendants.

Georgina **CARMONA–O'NEILL,** et al., Plaintiffs,

v.

Marcos **RODRIGUEZ–ESTRADA,** et al., Defendants.

Carmen D. **OSORIO–VELEZ,** et al., Plaintiffs,

v.

Marcos **RODRIGUEZ–ESTRADA,** et al., Defendants.

Civ. Nos. 88–2023(JAF), 88–2024(JAF), and 88–2025(JAF).

United States District Court, D. Puerto Rico.

Dec. 29, 1988.

Harvey B. Nachman, Edward M. Borges, Daniel R. Domínguez, Dominguez & Totti, San Juan, P.R., for plaintiffs.

Rafael Escalera Rodríguez, Lasa, Escalera & Reichard, Lino J. Saldaña, José Angel Rey, Saldaña, Rey, Moran & Alvarado, David Rivé, Vargas & Rivé, San Juan, P.R., for defendants.

## OPINION AND ORDER

FUSTE, District Judge.

These three consolidated cases, which arose from the recent mayoral election in San Juan, Puerto Rico, and are brought under 42 U.S.C. section 1983, form another sorry chapter in the saga of political factiousness that has become everyday reality on this island. For the reasons that follow, and pursuant to the doctrine set forth in *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), the court hereby abstains from exercising jurisdiction pending a determination of novel questions of local law by the courts of the Commonwealth of Puerto Rico.

I. *Factual and Procedural Background*

The most basic facts as we understand them at this time are as follows. On November 8, 1988, the municipality of San Juan held a general election for the office of mayor. The two leading candidates in that race were José Granados Navedo, of the Partido Nuevo Progresista ("PNP") and Héctor Luis Acevedo, of the Partido Democrático Popular ("PDP"). The initial results of the election gave Mr. Granados Navedo a plurality of the votes by a slim margin. However, a recount was conducted pursuant to a Puerto Rico law that requires a fresh tallying of the ballots any time the margin of victory is less than one-half of one percent. The recount, conducted in San Juan's Roberto Clemente Coliseum, was fraught with bitter controversy and took nearly a month, after which, on December 7, 1988, the Commonwealth Elections Commission ("C.E.C.") determined that Mr. Acevedo had defeated Mr. Granados Navedo by a total of twenty-nine votes. On that same day the C.E.C. certified Héctor Luis Acevedo as mayor-elect of San Juan.

During the voting numerous irregularities occurred that resulted in certain ballots and groups of ballots being excluded from the recount. One type of irregularity pertinent to this suit involved two hundred and ninety-two voters who, under circumstances that remain contested by the parties, initialed their ballots and thus had them invalidated by the C.E.C. pursuant to a Puerto Rico statute that forbids the placing of any identifying marks on ballots. Another type of irregularity involved a "supplemental list" voting procedure tailored by the Supreme Court of Puerto Rico shortly before the election in the case of *New Progressive Party v. Rodríguez Estrada*, 88 J.T.S. 128. In that case, the Supreme Court of Puerto Rico ordered certain voters not appearing on the "main" voting lists to be included on hand-written "supplemental lists," provided these voters complied with specified conditions designed to verify their eligibility. Those conditions included the signing of an affidavit and the presentation of a valid voter identification card which was to be placed along with that person's ballot in an envelope supplied by the C.E.C. On election day, however, officials from the C.E.C., either through negligence or by design, failed to supply enough envelopes to certain "colegios" or polling places. Therefore, officials at the "colegios," finding themselves without sufficient materials, were forced to improvise in the processing of these supplemental list voters. The end result was that at a number of "colegios" all the supplemental list ballots were separated from the voting registration cards, making it impossible to determine which ballots—for which candidates—were cast by credentialed voters and which were cast by ineligible voters; thus, entire groups of ballots were "contaminated" when it was found, for instance, that at a given "colegio" the number of valid voter identification cards fell far short of the number of supplemental ballots cast.[1] Moreover, plaintiffs allege that at other "colegios," uncredentialed supplemental list ballots were mixed in with ballots cast by those persons appearing on the main voting lists, thus "contaminating" the *entire* pool of votes from these "colegios." It was the job of the C.E.C. during the counting and recounting to determine which of these tarnished ballots or groups of ballots were to

---

1. To make matters worse, there were reportedly other "colegios" where the number of voter identification cards far *exceeded* the number of supplemental ballots cast.

be counted and which were to be invalidated.

From this confusion, which has already been likened by an eminent member of the Puerto Rico Supreme Court to "the world of fantasy" created by the author Gabriel Garcia Márquez in *One Hundred Years of Solitude*,[2] the ostensibly defeated candidate and several of his supporters have merged to claim that at all stages of the procedure members of the C.E.C. have not acted with an even hand. Plaintiffs allege in three suits under 42 U.S.C. section 1983 that defendants, the C.E.C. and several of its officials,[3] have in effect stolen the election from candidate Granados Navedo and have, in the process, disenfranchised hundreds of eligible voters, all in violation of plaintiffs' due process and equal protection rights under the fourteenth amendment.

Specifically, plaintiffs make three claims. First, the complaint alleges that certain voters were told by election officials to initial their ballots with the intent of rendering those ballots invalid. The majority of these invalidated initialed ballots, plaintiffs allege, were cast for Mr. Granados Navedo. Second, plaintiffs allege that C.E.C. officials refused to count thirty-some supplemental ballots, all cast for Mr. Granados Navedo, in spite of the fact that these officials had before them proof that these ballots were cast by eligible voters. Finally,[4] plaintiffs allege that while the C.E.C. invalidated a group of two hundred and seven "contaminated" ballots, the majority of which favored Mr. Granados Navedo, they nonetheless validated and counted a group of two thousand five hundred and fifty-seven equally contaminated ballots, the majority of which were cast for Mr. Acevedo. In addition to other equitable relief, plaintiffs ask that *all* of the invalidated votes be counted and that Mr.

Acevedo be decertified as mayor-elect of San Juan.

Plaintiffs originally filed these cases on December 14, 1988, requesting a temporary restraining order and permanent injunction. The next morning this court ordered the preservation of ballots and other evidence pending further litigation, but refused at that time to decertify Mr. Acevedo. The court further ordered the parties to supply briefs, as well as a chronology of pending local court actions related to this case. Moreover, the court requested the parties to show cause as to plaintiffs' prayer for injunctive relief. A hearing was held at 2:00 p.m. on Tuesday, December 20, 1988, and the next day the court issued a bench ruling, attached as Appendix I, abstaining from hearing the case pending a determination of questions of Puerto Rico law by the local courts.

## II. *Jurisdiction*

The jurisdictional counterpart of 42 U.S.C. section 1983 provides that:

District Courts shall have original jurisdiction of any civil action ... to redress the deprivation, under color of any State law statute, ... custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens.

28 U.S.C. section 1343(a)(3). Worded as such, "[j]urisdiction thus turns on whether there is a substantial claim under section 1983." *Griffin v. Burns*, 570 F.2d 1065, 1070 (1st Cir.1978). It is this court's view that plaintiffs have alleged a colorable section 1983 claim. "Undeniably the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections." *Reynolds v. Sims*, 377 U.S. 533, 554, 84 S.Ct. 1362,

---

**2.** *See PNP v. Rodríguez Estrada*, 88 J.T.S. 155 (Negrón Garcia, J. dissenting).

**3.** Plaintiffs also include Mayor-elect Acevedo as a named defendant, although they do not allege that Mr. Acevedo was personally involved in the misconduct outlined in the complaints.

**4.** The first and third claims (as described here) were brought as class actions. In a preliminary

order dated December 15, 1988, the court observed that the prerequisites to a class suit under Fed.R.Civ.P. 23(a) appeared to be met, and in a bench ruling on December 21, 1988, the court conditionally certified the classes pursuant to Fed.R.Civ.P. 23(c). However, we note defendants' standing objection to certification and will address those arguments in the future should this prove necessary.

1377, 12 L.Ed.2d 506 (1964). Moreover, not only does the Constitution protect the right to vote, but also the right to have one's vote counted. *United States v. Mosley*, 238 U.S. 383, 35 S.Ct. 904, 59 L.Ed. 1355 (1915); *Gamza v. Aguirre*, 619 F.2d 449 (5th Cir.1980). In this case, plaintiffs base their case on the deprivation of their first amendment rights, as well as on their due process and equal protection rights under the fourteenth amendment. After considering the allegations in the verified complaints, as well as in plaintiffs' proffer of evidence at the December 20, 1988 hearing, it appears that plaintiffs are prepared to prove "intentional or purposeful discrimination," *Snowden v. Hughes*, 321 U.S. 1, 8, 64 S.Ct. 397, 401, 88 L.Ed. 497 (1944), on the part of defendants throughout the electoral process. Therefore, we find—as an initial matter at least, for defects in the court's subject matter jurisdiction may be noticed at any time, *see* Fed.R.Civ.P. 12(h)(3); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 377, 98 S.Ct. 2396, 2404, 57 L.Ed.2d 274 (1978)—that the court has probable jurisdiction to hear plaintiffs' constitutional claims.

### III. *Abstention*

Once a federal court makes a determination, initial or otherwise, that it has jurisdiction over a matter, that court's hold over the proceedings is not easily loosened. Federal courts have a "virtually unflagging obligation ... to exercise the jurisdiction given them." *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). As Chief Justice Marshall said in 1821, "We have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given. The one or the other would be treason to the Constitution." *Cohens v. Virginia*, 6 Wheat. 264, 404, 5 L.Ed. 257 (1821). This court has said on an earlier occasion, and now reiterates here, that it cannot and will not relinquish the duties of the federal judiciary by closing its doors to litigants seeking protection of federal rights in a federal forum.

Nevertheless, when confronted with truly exceptional circumstances, district courts have sometimes found that the interests of judicial economy and federalism, as well as the interests of the litigants, are best served by abstention. We need not enumerate or discuss at length the various abstention doctrines, as this subject was recently well summarized in this district in *Corporación Insular de Seguros v. García*, 680 F.Supp. 476 (D.P.R.1988). Here, the facts at hand warrant only an examination of the abstention doctrine promulgated by *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

*Pullman* stands for the proposition that a federal court may abstain when to do so would avoid an unwarranted determination of federal constitutional questions involved in the interpretation or application of state law, or when the federal court decision would be rendered advisory in the event that the controversy may be resolved on state law grounds. *See Moore v. Sims*, 442 U.S. 415, 428, 99 S.Ct. 2371, 2379, 60 L.Ed.2d 994 (1978). In this way, the federal court "avoid[s] the waste of a tentative decision as well as the friction of a premature constitutional adjudication." *Pullman*, 312 U.S. at 500, 61 S.Ct. at 645. Thus, *Pullman*-type abstention serves the twin aims of avoiding advisory constitutional decision-making and needless federal intervention in local affairs.

Both of these aims are well served by abstention in this case. It is uncontested that Puerto Rico has established administrative and judicial procedures whereby any interested party can challenge the fairness of a local election. Concurrent with his federal claims, plaintiff Granados Navedo has utilized these procedures under Puerto Rico election law by filing suits in local court that correspond to the actions plaintiffs have filed here.[5] Those suits are at this moment pending before the General

---

**5.** Here we note that plaintiff Granados Navedo was compelled at this time to either file his state court action or forego any local remedy under Puerto Rico's ten-day statute of limitations for contesting an election. *See* 16 L.P.R.A. § 3274.

Court of Justice of Puerto Rico. There is a good chance that the entirety of this controversy can be resolved under local law. In particular, we note that two of plaintiffs' actions arise out of a breakdown in the equitable procedure fashioned by the Supreme Court of Puerto Rico to enfranchise "supplemental list" voters. Common sense dictates that the Supreme Court of Puerto Rico stands, at least initially, in the best position to decide the merits of a case in which election officials failed to execute properly one of that court's equitable remedies. Most significantly, however, the local courts' treatment of these cases under local law may render the constitutional issues moot.

In granting abstention we are, of course, mindful that in many instances abstention may cause "valuable federal rights to be lost in the absence of expeditious adjudication in the federal court." *Harris Co. Commissioners Court v. Moore*, 420 U.S. 77, 83, 95 S.Ct. 870, 875, 43 L.Ed.2d 32 (1975). In spite of the fact that time is of the essence in this case,[6] we do not think that plaintiffs' important constitutional rights will be jeopardized at this time by our deferring to the local courts. Rather, it is precisely due to the urgency of the matter, and the intense public exposure already being given to this case in Puerto Rico, that the local courts can be expected to treat the case with seriousness and expediency. We have no doubt that Judge Carlos E. Polo, who is presiding over the cases in Superior Court, and the Justices of the Puerto Rico Supreme Court, will be as unflagging in their duty to deliver prompt adjudication as this court would be.

The court also notes that in spite of our abstention, plaintiffs will be ensured an adequate and fair opportunity to have their federal claims heard. *See Gibson v. Berryhill*, 411 U.S. 564, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973). Pursuant to the United States Supreme Court case of *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), plaintiff Granados Navedo, in his actions before local court, has reserved his federal constitutional claims to be adjudicated here. Although plaintiffs of course had the choice of prosecuting both federal and state claims in Commonwealth court, *see Examining Board v. Flores de Otero*, 426 U.S. 572, 598, 96 S.Ct. 2264, 2279, 49 L.Ed.2d 65 (1976), "we cannot fault [them] for exercising [their] right to bifurcate the present case." *Corporación Insular de Seguros v. García*, 680 F.Supp. 476, 480 (D.P.R.1988). As we have already indicated above, it is the special mandate of the federal courts to protect constitutional rights against infringement by state action. This duty we will not abdicate. Nor can we, in the words of Justice Negrón Garcia of the Supreme Court of Puerto Rico, "close our eyes and separate reality from justice,"[7] or decide cases *in vacuo*. *Cf. P.R. Dept. of Consumer Affairs v. Isla Petroleum*, — U.S. —, 108 S.Ct. 1350, 1355, 99 L.Ed.2d 582 (1988). The sad reality in Puerto Rico today is that the political climate, ignited as it is by the "status issue," is so hostile that protagonists from all political perspectives are often concerned only with winning short-term partisan victories and are not, unfortunately, above trampling fundamental democratic rights in the process.[8] We have seen this

---

**6.** The new mayor of San Juan is scheduled to take the oath of office on January 9, 1989.

**7.** *PNP v. Rodríguez Estrada*, No. CE–88–722, slip op. (P.R.S.Ct. Dec. 21, 1988) (Negrón García, J. dissenting).

**8.** Those unfamiliar with the shrill, "claustrophobic" world of Puerto Rico's partisan politics are referred generally to R. Carr, *Puerto Rico: A Colonial Experiment* (Vintage Books, 1984). The mood of the following passage, describing the aftermath of the contested 1980 elections, remains applicable to the atmosphere as it exists today:

If the 1980 election campaign was conducted on the lines of what advertising men call a "knocking copy," postelectoral political activity descended into the jungle of tribal politics. To some observers, partisan passion seemed to threaten the continued credibility of Puerto Rican democracy. "A heavy stench of gunpowder," wrote one journalist, "is settling over the island." This may be taken as yet another outburst of island self-denigration, an expression of the sense of frustration produced by the electoral stalemate. The postelectoral "crisis," however, was not the responsibility of the Puerto Rican electorate; it was the

tendency in the flood of cases alleging illegal political discrimination in employment, *see e.g., Figueroa–Rodríguez v. Aquino,* 863 F.2d 1037 (1st Cir.1988) (majority and dissent); *Goyco de Maldonado v. Rivera,* 849 F.2d 683 (1st Cir.1988) (majority and dissent); *Juarbe–Angueira v. Arias,* 831 F.2d 11 (1st Cir.1987) (majority and dissent); *Quintana v. Anselmi,* 817 F.2d 891 (1st Cir.1987) (majority and dissent); *Raffucci Alvarado v. Zayas,* 816 F.2d 818 (1st Cir.1987); *Rodríguez Rodríguez v. Muñoz Muñoz,* 808 F.2d 138 (1st Cir.1986) (majority and dissent); *De Abadia v. Izquierdo Mora,* 792 F.2d 1187 (1st Cir.1986) (majority and dissent), and now, allegedly, in the context of voter disenfranchisement. We agree with the Supreme Court of Puerto Rico that the "courts must break the trend and vicious circle established on the island" of political discrimination and electoral misconduct. *See Colón v. CRUV,* 115 P.R.R. 503 (1984) (attached as Appendix II to *Echevarría v. Gracia Anselmi,* 642 F.Supp. 843, 855 (D.P.R.1986)). Therefore, in this case, abstention in no way means that plaintiffs will be denied a federal forum in which to present their federal claims. This court will retain jurisdiction and adjudicate plaintiffs' claims under the federal constitution should that prove necessary following the final disposition of the Commonwealth courts.

Finally, the court is well aware that "[t]here is influential case law to the effect that cases involving civil rights issues, especially in the context of a section 1983 action, are not good candidates for abstention." *Corporación Insular de Seguros v. García,* 680 F.Supp. at 479. Without question, since the basis of a section 1983 action is to safeguard constitutionally protected rights against official actions by state officials, "there is an unspoken tendency on the part of federal courts to hear the case in order to ensure the highest protection of that individual's federal constitutional rights and to preclude any potential [local]

bias." *Id.* Moreover, it has been observed that abstention in a section 1983 action is inappropriate insofar as it may amount to an impermissible exhaustion of state remedies requirement contrary to the Supreme Court's holding in *Patsy v. Florida Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). These considerations, however, are outweighed in this case by the exceptionally delicate federalism concerns which arise whenever a federal court contemplates intervening in the state election process, however flawed that process might be. Although the right to vote in a state election is in the final analysis bottomed on federal law, *Reynolds v. Sims,* 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), that right is "properly limited by respect for the political and federal framework established by the Constitution. This framework [in the first instance] leaves the conduct of state elections to the states." *Gamza v. Aguirre,* 619 F.2d 449, 453 (5th Cir.1980) (citing *Oregon v. Mitchell,* 400 U.S. 112, 124–29, 91 S.Ct. 260, 264–67, 27 L.Ed.2d 272 (1970)). There is a marked trend in the case law—in fact, it could not be clearer—that in actions brought under section 1983 seeking the drastic remedy of federal intervention in the state electoral process, courts should act only when parallel state procedures would be wholly unprotective of plaintiffs' federal constitutional rights. *See generally Griffin v. Burns,* 570 F.2d 1065 (1st Cir.1978); *Gamza v. Aguirre,* 619 F.2d 449 (5th Cir.1980); *Powell v. Power,* 436 F.2d 84 (2d Cir.1970); *Partido Nuevo Progresista v. Barreto Pérez,* 639 F.2d 825 (1st Cir.1980). Abstention is thus warranted, we feel, given the exceptional circumstances of this case, to avoid the "friction of an unnecessary constitutional adjudication." *Pullman,* 312 U.S. at 500, 61 S.Ct. at 645.

Therefore, this action is hereby stayed until further order of this court.

IT IS SO ORDERED.

---

artificial creation of political leade  who, still breathing the heated atmosphere of a bitterly fought campaign, lost all sense of proportion, if not all sense of responsibility. It seemed as if ... members of a political elite ... were

pursing their internecine feuds with no concern for the pressing problems of the island. "What Puerto Rico needs," remarked Mayor Hernán Padilla, "is to depoliticize itself a little." (Footnotes omitted). *Id.* at 381.

## APPENDIX I

### BENCH RULING

We do not take plaintiffs' allegations in this case lightly. Plaintiffs have alleged, and claim they have the evidence to prove, that this election was purposefully stolen from José Granados Navedo, and that hundreds of voters were in the process disenfranchised. Moreover, they claim that mismanagement and misconduct of election officials, both at the polling places and during the recount at Roberto Clemente Coliseum, was *so egregious as to render the entire process patently and fundamentally unfair* and that an equitable remedy by this court under the United States Constitution is warranted. Whether they can prove this or not, I do not know. But at the very least, this court notes—and defendants have as much as admitted—that mistakes have permeated the election process so that even if there turns out to be no valid constitutional claim, the integrity of this election has been tarnished in the eyes of many citizens who do not understand the technicalities of constitutional law. Envelopes were not delivered, some ballots were without credentials, some credentials were without ballots, it took nearly one month to finally issue a decision and certify a winner, and now, even as everyone is getting ready to celebrate the holidays, a controversy still exists. It is a mess. Whether this was as a result of *intentional discrimination or simply a matter of negligence or incompetence*, is not clear at this time. But without a doubt, the people of Puerto Rico deserve a better electoral system than this. That is for sure.

Here is what we are going to do. I am going to assume for the time being that we may have jurisdiction, as plaintiffs allege. Moreover, under Fed.R.Civ.P. 23(c)(1), I am going to conditionally certify as a class action plaintiffs' causes of action numbered 88–2024 and 88–2025, bearing in mind, however, defendants' arguments to dismiss these cases as a class suit. However, under *Pullman,* I am going to abstain from hearing this case until we get a determination on unresolved issues of Puerto Rico law by the local courts. I think there is a good chance that each of these consolidated cases can be resolved under local law. For example, it seems to me that the initialling case might fall squarely within the Supreme Court of Puerto Rico's case validating the "pavazos" ballots. Also, all parties admit that the other two cases, and by that I mean the envelope case and the thirty uncounted ballots, arose as the result of a breakdown in the remedy fashioned by the Supreme Court of Puerto Rico regarding the supplemental voting lists. The local courts are best equipped to rule upon matters of Commonwealth law, especially the problems created by the admittedly faulty execution of one of their remedies. It may turn out that the corrective procedures contemplated by Puerto Rico's election law can dispose of these cases and that there is no need to address the constitutional issues at all. I have no doubt that the local courts will treat this matter with the proper seriousness and urgency that it obviously deserves. Therefore, I do not believe plaintiffs' federal constitutional rights will be jeopardized by abstention at this time. This court further notes that in the cases filed in local court, plaintiff José Granados has, pursuant to the United States Supreme Court case of *England v. Louisiana State Board of Medical Examiners,* reserved his claims under the federal constitution to be heard by this court. I can assure you that if important constitutional questions still exist after final disposition by the Commonwealth courts, those claims will be heard. This is not a case where abstention would serve to deny the plaintiff a hearing in a federal court of his federal constitutional claims. Like almost everyone in Puerto Rico, we have our eyes on this case. This court will retain jurisdiction while the Commonwealth courts act, and we will adjudicate the constitutional claims should that prove necessary. But as I have already said, there is a chance that this controversy can be resolved under the Commonwealth law that the Puerto Rico Legislature drafted to resolve disputed elections. Therefore, for the time being I will defer to the Commonwealth courts and abstain from hearing the case.

This action is now stayed until further order from this court. An expanded order and opinion will be issued from my chambers in the near future. That is all.

DATED in San Juan, Puerto Rico, this 21st day of December, 1988.

/s/ José Antonio Fusté
JOSE ANTONIO FUSTE
U.S. District Judge